**Harold J. MATHISEN, Plaintiff and Appellee,**

v.

**Carol J. MATHISEN, Defendant and Appellant.**

**Civ. No. 9487.**

Supreme Court of North Dakota.

Feb. 23, 1979.

Charles R. Isakson, of Richardson & Blaisdell, Hazen, for plaintiff and appellee.

Bruce D. Johnson, of Gackle, Johnson & Rodenburg, Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Carol J. Mathisen appeals from the district court's denial of her motion to modify a judgment and decree that granted Harold J. Mathisen a divorce from her. We affirm.

Mr. Mathisen commenced a divorce action against Mrs. Mathisen in October 1976, based upon alleged irreconcilable differences existing between them. His complaint was personally served on Mrs. Mathisen on October 9, 1976. The body of his complaint comprised eleven numbered allegations, the most important of which for purposes of this appeal are the following:

"4.

"That one child has been born to the marriage, . . .

"5.

"That one child has been adopted by the Plaintiff and Defendant during the course of the marriage, . . .

. . . . .

"10.

"That plaintiff is a fit and proper person to have custody of the aforementioned minor children."

In the prayer for relief of his complaint,[1] which included six numbered paragraphs, Mr. Mathisen asked the court to grant the parties a divorce, to divide the parties' real and personal property and indebtedness in the manner described therein, to grant custody of the parties' two children to him, and to "grant such other and further equitable relief as the Court deems necessary."

Mrs. Mathisen did not answer the complaint.

On November 4, 1976, Mr. Mathisen's attorney served notice by mail upon Mrs. Mathisen that Mr. Mathisen would apply for a default judgment against her on November 16, 1976. On November 16, 1976, the district court conducted a default hearing in this matter.[2] Mr. Mathisen testified at length at the hearing about the couple's marital problems and about Mrs. Mathisen's sometimes erratic behavior. After the hearing, the district court made its findings of fact and conclusions of law and issued an order granting Mr. Mathisen a divorce. The judgment and decree was entered in accordance with the district court's order. In paragraph 3 of its judgment and decree, which is identical with paragraph 4 of its conclusion of law, the district court stated:

"That Defendant shall pay as child support for the support of the parties' two

---

1. The prayer for relief of his complaint reads:
"WHEREFORE, Plaintiff prays for Judgment against the Defendant as follows:
"1.
"That the parties be granted an absolute decree of divorce on the grounds of irreconcilable differences.
"2.
"That the Plaintiff be granted custody of the aforementioned minor children with reasonable visitation rights to be given to the Defendant.
"3.
"That Plaintiff be granted sole ownership of the real property.
"4.
"That Plaintiff be granted sole ownership of all personal property, except the 1976 Buick

Skylark car of which the Defendant shall become sole owner.
"5.
"That Plaintiff be held responsible only for indebtedness incurred during the course of the marriage prior to September 28, 1976, except that should Defendant ever sell the 1976 Buick Skylark car, Defendant be held responsible for any indebtedness owing upon such car; and that Defendant be held responsible for any and all debts incurred by her on and after September 28, 1976.
"6.
"That the Court grant such other and further equitable relief as the Court deems necessary."

2. See Rule 55(a), N.D.R.Civ.P.

minor children the sum of $25.00 per child per month until each child reaches age 18, such payments to be made to the Clerk of District Court, Mercer County District Court, Stanton, North Dakota, commencing on December 1, 1976, and due and payable on the 1st day of each calendar month thereafter; and upon the condition that child support payments are paid in full and not in arrearage, Defendant shall be entitled to visit said children between the hours of 9:00 o'clock A.M. and 9:00 o'clock P.M. and no more than two days per calendar month and in no place other than Hazen, North Dakota, and only if the two days selected by the Defendant for visitation are not legal holidays upon which Plaintiff is not required to be at his normal place of employment."

Mrs. Mathisen did not appeal the district court's judgment and decree. In January 1978, however, she moved that the district court modify the judgment and decree by terminating her child-support obligations, granting custody of both of the children to her and reasonable visitation rights to Mr. Mathisen, and requiring Mr. Mathisen to provide support to her and the children. To support her motion, Mrs. Mathisen made assorted allegations of fact and argued that paragraph 3 of the district court's judgment and decree of divorce, and its identical counterpart in paragraph 4 of the conclusions of law, were void because they extended beyond the relief prayed for in the pleadings. The district court conducted a hearing on the motion and thereafter denied it, finding that Mrs. Mathisen failed to demonstrate "that there has been a substantial change of circumstances since the divorce was granted" and that "paragraph three of the Judgment and Decree of Divorce is in full force and effect, [and] was issued with appropriate jurisdiction." Mrs. Mathisen appeals to this court the district court's denial of her motion.

Mrs. Mathisen sets forth five questions on appeal:

"1. Did the Judgment and Decree award relief beyond the prayer of the complaint in violation of Rule 54(c) of the North Dakota Rules of Civil Procedure?

"2. Does granting relief beyond the pleadings violate the constitutional right of due process?

"3. Were the visitation rights granted in the Judgment and Decree reasonable?

"4. Does a prayer for 'such other and further relief as the Court deems necessary' allow the Court to grant relief not specifically prayed for?

"5. Is the Judgment and Decree void for want of jurisdiction?"

I

Mrs. Mathisen argues that because Mr. Mathisen's divorce complaint and prayer for relief did not request child-support payments, the district court was without jurisdiction to require her to make payments for the support of her two children, whose custody was awarded by the decree to Mr. Mathisen. She also argues that the general prayer for relief was not sufficient to permit the district court to order child-support payments. Mrs. Mathisen relies upon Rule 54(c), N.D.R.Civ.P., which provides:

"A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

Mr. Mathisen argues that because his prayer for relief asked the district court not only to grant the divorce but also to award child custody to him, it provided sufficient notice to Mrs. Mathisen that the district court could award child-support payments under the authority granted to it by the provisions of Section 14–05–24, N.D.C.C. That section provides:

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, *and*

*may compel either of the parties to provide for the maintenance of the children of the marriage,* and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects." [Emphasis added.]

Both Mr. and Mrs. Mathisen cite cases from various jurisdictions that they contend support their respective positions.[3] These cases—most of which involve the question whether a court in a default divorce action can require a defaulting defendant to make alimony payments, child-support payments, or both, when the plaintiff has failed to request such relief in his or her prayer for relief—can, we believe, be classified into four broad groups. Although in most instances these cases may be distinguished from the case at bar on their facts or their application of statutes different from those of North Dakota, we nevertheless examine cases representing each of the four rationales.[4]

*Cox v. Cox*, 158 Or. 74, 74 P.2d 983 (1938), typifies the first rationale. There, the court held that, in a default proceeding, the lower court had jurisdiction to make an award of alimony even though there were no allegations concerning alimony in the complaint nor any specific request therefor in the prayer for relief. The court stated that the award of alimony was only incidental to the divorce. Moreover, the court indicated that the defendant could not, as a matter of law, assert that the decree entered against him was the result of inadvertence and surprise because he was personally served with the complaint and was bound to know that the lower court had statutory authority to award alimony in a divorce proceeding.

The California Supreme Court echoed this position in *Burtnett v. King*, 33 Cal.2d 805, 205 P.2d 657, 12 A.L.R.2d 333 (1949). The

court held that in a default divorce proceeding in which the plaintiff's complaint did not contain a prayer for distribution of community property, the lower court was without jurisdiction to make an award of the property. The court also pointed out, however, that California courts have held child support and alimony to be so germane to the issue of divorce that a defendant must anticipate awards of both although there is no prayer to that effect in the complaint.

A case cited by both parties, *Rinker v. Rinker*, 3 N.J.Super. 251, 64 A.2d 910 (1949), represents the second rationale. An examination of that decision reveals that a divorce petition was filed which contained a general prayer for relief but none for alimony or child support. The defendant defaulted. On appeal, the court held that an award of alimony by the lower court could not be enforced because the petition contained no prayer for alimony. With regard to child support, however, the court stated:

"In that instance, the situation is different. The duty of the defendant to support his off-spring is not dependent on any matrimonial status. It is continuous, in any event, and wholly within his obligation. The filing of the petition in the case sub judice, setting forth the fact of the birth of the said children, was incidental to his responsibility, and being personally served, defendant was called upon to provide for their sustenance. Fatherhood is directly interdependent upon the duty to support and maintain. Children of parents engaged in marital dispute or dissolution must have the court to stand by them for in quite a direct sense, they are pawns and without capacity to care for themselves. In their interests, I believe the issue to fix a sum for their support under the petition in the case sub judice was within the authority of the Advisory Master, and the amount fixed in their behalf will be considered as having been duly determined and res adjudicata

---

3. We have found no North Dakota decisions directly in point and this apparently is a matter of first impression in this State.

4. See Annot., 12 A.L.R.2d 340 (1950), for a discussion of some of the cases in this area.

against any attack under the circumstances existing at the time of the entry of the decree." 3 N.J.Super. at 255–256, 64 A.2d at 912–913.

Also reflecting the second rationale is *Austin v. Austin*, 173 Mich. 47, 138 N.W. 237 (1912). In *Austin*, the court based its decision on a statute that authorized a court granting a divorce to "make such further decree as it shall deem just and proper, concerning the care, custody and maintenance of the minor children of the parties, . . . ." The court held that the lower court, which granted a divorce in a default proceeding, properly issued an order requiring the defaulting defendant to make child-support payments even though no prayer for such relief was included in the divorce complaint. In its decision, the court distinguished between alimony, which it said could not be awarded absent a prayer for such relief in the complaint, and allowances for the maintenance of minor children, which the court said was authorized despite no prayer for such relief in the complaint.

*State ex rel. Adams v. Superior Court of the State, Pierce County*, 36 Wash.2d 868, 220 P.2d 1081 (1950), is an example of the third rationale.[5] There, a divided court held that because a complaint filed in a divorce action did not pray for an award of alimony or maintenance of the parties' minor children, the trial judge was without authority to make either of those awards upon default of the defendant. We note, however, that the dissenting opinion would have held that, in a divorce action, a statute comparable to Section 14–05–24, N.D.C.C.,

authorized the court to include a provision for the payment of alimony even though the complaint contained no such prayer for relief and the defendant defaulted.

The decision in *Kerr v. Kerr*, 234 Ark. 607, 353 S.W.2d 350 (1962), is premised on the fourth rationale. There, the court held that a lower court was without authority to provide for child custody and support in a default divorce proceeding in which the complaint did not contain any plea for custody or support. Yet, limiting the scope of its decision, the court stated:

"The plaintiff's statement of her cause of action contains no reference to financial problems of any nature or kind. Nor does the complaint contain so much as a hint that any decree touching upon custody or support will be sought. It is apparent from the pleadings here that the plaintiff was seeking but one thing—a divorce. This being true, she cannot enlarge and broaden the scope of the action to include matters foreign to her complaint upon the default in appearance by the defendant." 234 Ark. at 611, 353 S.W.2d at 353.

This language indicates that the court might have reached a contrary result had the plaintiff included, as Mr. Mathisen did, a prayer requesting child custody.

These are but a few of the many cases from other jurisdictions which have considered this question.[6] They illustrate the wide difference of opinion among the courts ranging from a conclusion that no alimony or child support may be awarded without a specific prayer for relief in the complaint to

---

5. See also *Sheldon v. Sheldon*, 47 Wash.2d 699, 289 P.2d 335 (1955).

6. *Burson v. Burson*, 149 Colo. 566, 369 P.2d 979 (1962), and *Viera v. Viera*, 107 Cal.App.2d 179, 236 P.2d 630 (1951), both cited by Mrs. Mathisen, are inapposite to the case at bar.

In *Burson v. Burson, supra*, the plaintiff, in her complaint, sought a divorce and an order for custody of a minor child, but no other relief. Because the defendant defaulted, the court held that the lower court was without authority to award alimony. While this decision, as Mrs. Mathisen has noted, was based on R.C.P.Colo. 54(c), we observe that the complaint in *Burson* concluded a specific prayer for custody of the

child, and child support was not the issue before the court. We cannot conclude that the Colorado court would have held, in view of the prayer for child custody in the complaint, that child support could not have been made a part of the divorce decree in that instance. Moreover, in *Viera v. Viera, supra*, the court held that a portion of an interlocutory divorce decree which restrained a defaulting defendant from annoying or molesting the plaintiff and from appearing at the plaintiff's place of employment was invalid because the amended complaint of the plaintiff did not request such relief. That decision is obviously different on its facts from the issue before this court.

the conclusion that the court has the inherent power to award alimony and child-support payments in default divorce proceedings even though there was no prayer for that relief in the complaint. Some of the courts have distinguished between the authority to provide for child-support payments and the authority to award alimony under these circumstances. In certain instances the differences of opinion among the jurisdictions may be due to particular statutory provisions in those States.

■ In North Dakota there is a strong public policy that the courts have the responsibility to assure the proper support and maintenance of minor children. This public policy is apparent from a reading of not only Section 14–05–24, N.D.C.C., but also Chapter 14–09, N.D.C.C. [Parent and Child], and Chapter 27–20, N.D.C.C. [Uniform Juvenile Court Act].

■ We conclude that Mr. Mathisen's prayer for relief, when considered with Section 14–05–24, N.D.C.C., which authorizes the district court to compel either of the parties to provide for the maintenance of the children of the marriage, was sufficient notice to Mrs. Mathisen that the district court might order her to provide support payments for her children.

The first sentence of Rule 54(c), N.D.R. Civ.P., is premised "on the belief that it would be fundamentally unfair to give greater or different relief from that prayed for since a defaulting defendant may have relied on the relief requested in the complaint in deciding not to appear and defend the action." 10 Wright & Miller, Fed.Prac. & Proc.: Civil § 2662, p. 92 [describing F.R.Civ.P. 54(c), which North Dakota adopted without change]. But in limiting judgment by default to that requested in the demand for judgment, the rule obviously contemplates concrete and specific requests for relief. Unfortunately, requests for some kinds of relief cannot be cast in definite terms. The case at bar illustrates this quandary. Provision for support of the children of a marriage can at best be framed in uncertain terms because the district court, after considering the evidence, will order such support as is necessary for the children regardless of what their parents have requested or are willing to provide. In this situation, we must honor both the district court's obligation to protect the children and the requirements of Rule 54(c), N.D.R.Civ.P. Mrs. Mathisen received notice of Mr. Mathisen's request for custody of the children. Moreover, she is presumed to have known that the district court, after viewing the evidence adduced at trial, would order whatever relief was necessary to provide for the support of the children. Hence, the purpose of Rule 54(c), N.D.R. Civ.P.—to apprise a defendant of the relief which the court might grant upon default— has been achieved.

Mrs. Mathisen may be correct in urging that, in the absence of any prayer in the complaint relating to the children, the general prayer for relief alone is insufficient to authorize the district court to order child-support payments. We need not decide that question, however, because Mr. Mathisen's complaint contains a prayer that the district court award custody of the children to him. Moreover, because of Mr. Mathisen's prayer for custody, we need not determine whether, absent a prayer in the complaint relating to child custody, the provisions of Section 14–05–24, N.D.C.C., would be sufficient to authorize the district court to require child-support payments.

## II

Mr. Mathisen's prayer for relief also asked that the court grant "reasonable visitation rights" to Mrs. Mathisen. Mrs. Mathisen has admitted that the complaint containing this prayer was properly served upon her. After conducting a hearing, at which Mrs. Mathisen did not appear, the district court ordered in its judgment and decree of divorce that she receive certain visitation rights.[7] Mrs. Mathisen asserts that because these visitation rights are "unreasonable," they also are beyond the relief

7. See par. 3 of judgment and decree, *supra*.

requested by Mr. Mathisen in his complaint, in violation of Rule 54(c), N.D.R.Civ.P. She argues that had she known that the district court might award her "unreasonable" visitation rights, she would have appeared and defended against Mr. Mathisen's action. By assuming that the visitation rights she actually received are unreasonable, however, Mrs. Mathisen has avoided the real issue. The real issue is the meaning of "reasonable visitation rights." Mrs. Mathisen appears to urge that these words denote a definite visitation arrangement contrary to the one established by the district court.[8] She fails to recognize that the reasonableness of visitation rights is to be determined only with reference to the specific situation in which such rights are granted. More important, a logical extension of her argument is that the parties to a divorce proceeding may, through procedural devices such as pleading, bind the district court to custody arrangements with which it disagrees.

■ The issue of visitation rights for the noncustodial parent is a part of the broader issue of child custody. See *Adams v. Adams*, 198 N.W.2d 118 (N.D.1972). In custody matters, the district court is not bound by private arrangements to which the parties have agreed. See, e. g., *Voskuil v. Voskuil*, 256 N.W.2d 526 (N.D.1977). Instead, when the district court considers custody issues such as award of visitation rights, its paramount concern must be the best interests of the children involved. See, e. g., *Porter v. Porter*, 274 N.W.2d 235 (N.D. 1979); *Adams v. Adams, supra*.

■ Here, it cannot be doubted that the district court was guided by the best interests of the Mathisens' two children in its consideration of the custody issue.[9] Mr. Mathisen testified at the default divorce proceeding about Mrs. Mathisen's sporadic drug use and erratic behavior. In view of this testimony, the visitation rights received by Mrs. Mathisen are reasonable. Hence, the visitation rights she received did not extend beyond those requested by Mr. Mathisen in his complaint.

Perhaps Mrs. Mathisen believes that her visitation rights are unfair. Even if this belief were correct—a view that we do not share—this court has stated that, in custody matters, "fairness to the parents is not the test, . . ." *Odegard v. Odegard*, 259 N.W.2d 484, 486 (N.D.1977). See also *Porter v. Porter, supra*. Furthermore, any ostensible unfairness to Mrs. Mathisen is mitigated by the fact that her present visitation rights are not unalterable. If she is able to demonstrate to the district court that a material change of circumstances has occurred, the district court, acting in the best interests of the children under Section 14–05–22, N.D.C.C., might modify its original custody decree.[10]

### III

Because we have concluded that the relief granted by the district court did not extend beyond the relief requested in Mr. Mathisen's complaint, we do not find it necessary

8. Mrs. Mathisen has cited two cases in which, according to her, visitation rights "more liberal" than those she received were found unreasonable. See *Adams v. Adams*, 198 N.W.2d 118 (N.D.1972); *Fox v. Fox*, 180 Neb. 847, 146 N.W.2d 208 (1966). Neither case is helpful to her. *Adams v. Adams, supra*, turns on facts not present in the case at bar, and *Fox v. Fox, supra*, presents an issue unrelated to the one that we address herein.

9. Our certainty that the district court considered the children's best interests comes from our reading of the transcript of the default hearing conducted on November 16, 1976. The district court's findings of fact and conclusions of law neither stated that its custody award was in the best interests of the children, nor,

apart from a statement that Mr. Mathisen "is a fit and proper person to have custody" of the children, delineated the factors upon which it relied in resolving the custody issue. "In prior opinions concerning divorce actions, we have all but pleaded with district courts to prepare clear and detailed findings to enable us to gain a clear understanding of the trial court's decision and thus properly perform our review function." *Porter v. Porter, supra*, 274 N.W.2d at 241. We reiterate this entreaty.

10. "14–05–22. Custody of children. In an action for divorce, the court, before or after judgment, may give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may vacate or modify the same at any time."

to discuss whether or not the granting of relief beyond the pleadings violates the constitutional right of due process, whether or not the general prayer for relief allows the court to grant relief not specifically prayed for, or whether or not the judgment and decree were void for want of jurisdiction. These issues are dependent upon the question of the authority of the district court to make an award of child-support payments and visitation rights in this instance, and we have answered that issue in the affirmative.

The order of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.