Sandra Marie GASSER, Plaintiff and Appellee,

v.

Jerry Max GASSER, Defendant and Appellant.

Civ. No. 9696.

Supreme Court of North Dakota.

March 20, 1980.

Rehearing Denied April 21, 1980.

Richard A. McKennett, of Rolfstad, Winkjer, McKennett, Kaiser & Stenehjem, Williston, for plaintiff and appellee (on brief).

Jerry Max Gasser, pro se.

VANDE WALLE, Justice.

Jerry Max Gasser ("Jerry") moved to modify the 1973 decree of divorce granting Sandra Marie Gasser ("Sandra"), a divorce from Jerry. The district court issued an order to modify the divorce judgment, from

which Jerry appeals. We modify the order of the district court and, as modified, affirm the order.

In 1973 Sandra obtained a divorce from Jerry in Williams County district court. At that time both parties resided in Williston where Jerry had a dental practice. Jerry did not answer the complaint but entered an admission of service and waiver of notice whereby he entered his general appearance, waived his time to answer or otherwise plead to the complaint, and consented to the trial of the action "as if by default without further notice . . . ." The parties had entered into a property-settlement agreement whereby Sandra was to have custody of their minor children: Diane, born August 28, 1960; Nanci, born February 20, 1963; and Jean, born March 29, 1969. Jerry was to have reasonable visitation rights upon his giving notice to Sandra of the time and purpose of such visits. In addition to the division of property agreed to by the parties, Jerry was to pay Sandra the sum of $150 per month for each child until the child reached the age of 18 years. The agreement, executed on May 10, 1973, provided that on or before November 1, 1973, the parties or their attorneys would review the financial situation and status of Jerry and "if the same so justifies the Defendant agrees that he will pay increased child support to the Plaintiff in an amount of at least Thirty-five dollars ($35.00) per month per child." On May 14, 1973, both parties with their respective attorneys appeared in district court, at which time the district court granted Sandra a divorce from Jerry and incorporated into the divorce decree the provisions of the property-settlement and child-custody agreement which the parties had executed.

Subsequently, in late 1973 or early 1974, Jerry moved to Grand Forks, and in June 1974 Sandra, who by that time had remarried, moved to Indiana.

Jerry apparently became disenchanted with the agreement he had entered into with Sandra at the time of the divorce and

became delinquent in making the support payments he was required to make pursuant to the divorce judgment. A reciprocal enforcement-of-support action was instituted by Sandra through Indiana officials and transferred to the district court of Grand Forks County where Jerry was residing. Jerry, prior to an application to modify the divorce decree, moved for a change of venue and for change of jurisdiction, attempting to have the jurisdiction of the divorce decree transferred from Williams County to Grand Forks County. We assume he intended to have the Grand Forks County district court, which had jurisdiction of the reciprocal enforcement-of-support action, hear his complaints about the original divorce action which had been venued in Williams County. His motions were denied by the Williams County district court. Jerry subsequently filed, in Williams County district court, an application to modify the divorce decree entered in 1973. That matter was heard in 1979 and the Williams County district court entered an order modifying the divorce judgment. From that order Jerry has appealed to this court.

The order modifying the divorce decree and the district court's memo filed with the order indicate that, because Jerry and Sandra left Williston and the distance between the parties made the day-to-day visitation rights which Jerry was given in the original decree impracticable, changed circumstances resulted which require a modification of that decree. The order provides that the 1973 divorce judgment be modified to grant Jerry, as noncustodial parent, a right of visitation with the minor children during the first 15 days of August each year, commencing in 1980. Jerry is to pay the transportation from the children's place of residence to his place of residence, and Sandra is to pay the return transportation. In addition, Jerry is permitted to take the children as dependents on his tax return provided he is not in arrears on child-support payments at the end of a calendar year. If he is in arrears, Sandra—not Jerry—will be allowed to take the deduction.[1]

1. The transcript of testimony indicates that when Jerry was current in his child-support

payments he *did take the children as deductions on his tax returns.* After he became de-

In his notice of appeal Jerry appeals from the judgment rendered against him by the Williams County district court on August 13, 1979, from the order of the district court modifying the divorce judgment, and from the district court's memo on motion hearing. Jerry acted as his own counsel on appeal, both in preparation of the brief and in oral argument. At the district court level, however, Jerry was represented by counsel. The application to the district court filed by Jerry's counsel requests an order modifying the original divorce decree as follows:

"I.

"Directing and ordering the amount of child support payable to each child to be decreased to a sum payable of $50.00 per month, per child.

"II.

"Permit and authorize the Defendant to claim the two children as dependent children on his tax return for both federal and state purposes.

"III.

"That the Court specify reasonable visitation taking into consideration the distance between the parties, and requiring the Plaintiff to pay the costs of transportation to exercise such visitation outside of the State of North Dakota or in the alternative grant custody of the minor children of the parties to the Defendant.

"IV.

"That the Court review, reconsider and reduce any and all accrued arrearages to the sum that that [sic] would be economically feasible for the Defendant to pay."

Jerry's affidavit accompanying the application clearly indicates that his basis for modification of the original divorce decree is based on changed circumstances. However, in his brief on appeal, Jerry indicates that the appeal is taken ". . . on all the issues involved in a Divorce Decree which should be completely modified, and demands all the Rights guaranteed under the Constitution of the United States, the North Dakota Constitution, the Civil Rights Acts and the Equal Rights Amendment which North Dakota has ratified."

■ It is apparent from reading Jerry's brief and listening to his oral argument that on this appeal he is not only attempting to obtain a modification of the original divorce decree because of changed circumstances but is also attempting to obtain a review of the original divorce decree. In his brief and on oral argument he alleges he was not properly represented by counsel at the time of the original divorce decree; that he was not aware of his legal rights at that time; that at the time of the divorce he was "mentally and physically upset because of all the changed circumstances, unfamiliar to any legal proceedings, and unaware of all the subtleties involved." Although there is a slight reference to these matters in Jerry's testimony at the hearing to modify the divorce judgment, there is no evidence to sustain his allegations. Jerry's application to modify the divorce decree was predicated on changed circumstances. He cannot evolve an appeal from the order in those proceedings to an appeal from the original divorce decree. The original divorce decree was entered in May 1973. Jerry's application for modification, if it had been presented as an appeal from the original divorce decree, was not filed until June 1979, some six years later. Appeals from judgments must, of course, be taken within 60 days after notice of entry of judgment. Rule 4, N.D.R.App.P. Jerry's application

---

linquent Sandra informed him she was going to take the children as deductions on her tax returns. Additionally, Jerry, for reasons with which we are not here concerned, did not file tax returns for the last several years. His views on tax matters are found in *Dorgan v.*

*Gasser*, 274 N.W.2d 173 (N.D.1978). The district court stated those proceedings were of little or no relevance and were given no consideration or weight in reaching its decision, nor do we consider those proceedings in reaching our decision.

for modification was not a motion under Rule 60, N.D.R.Civ.P., to relieve Jerry from the original divorce judgment, nor was evidence introduced which would support such relief. On this appeal, therefore, we will limit our review to the application for modification of the original divorce decree and the order of the district court entered as a result thereof.

In reviewing the specific requests which Jerry made for modification of the original divorce decree, we must consider the principles previously set forth by this court governing a modification of a divorce decree. In *Corbin v. Corbin*, 288 N.W.2d 61, 65 (N.D.1980), we stated:

> "This court has often held that a material change in the circumstances of the parties must be shown before a modification of the initial decree is proper. *Becker v. Becker*, 262 N.W.2d 478 (N.D.1978); *Foster v. Nelson* [206 N.W.2d 649 (N.D. 1973)]. Although Rule 52(a) of the North Dakota Rules of Civil Procedure does not appear to apply to decisions on motions generally, it does apply to a motion to modify a divorce decree. A fact-finding process is required before it can be determined that a material change in circumstances has occurred. *Becker v. Becker, supra* at 481."

In *Bryant v. Bryant*, 102 N.W.2d 800 (N.D.1960), this court discussed modification of a divorce decree providing for child-support payments based on an agreement between the parties. The court noted that some jurisdictions do not permit modification of a decree based on a stipulation of the parties because the arrangement is contractual instead of a judicial determination, and a decree based on an agreement between the parties is no more subject to modification or change by a court than the terms of any other private agreement would be. This court rejected that rule, however, and stated:

> "While we believe the better rule to be that courts do have power to modify a decree, even though it is founded on an agreement, such power should be exercised only on a proper showing of changed circumstances. The court should be more reluctant to order a revision and modification of a decree where such decree was based on agreement than where such decree is based on the finding of the court as to ability to pay." 102 N.W.2d at 807.

See also *Kinsella v. Kinsella*, 181 N.W.2d 764 (N.D.1970).

Jerry challenges the refusal of the district court to reduce the child-support payments from $150 to $50 per month per child. In support of his contention that circumstances have materially changed since the initial divorce decree, he argues that his earning capacity has been diminished by a considerable amount through no fault of his own. The trial court found that since the divorce Jerry's gross earnings as a dentist were as follows:

> "1973–1975     Again, no evidence submitted
> "1976     $ 42,000
> "1977     43,000
> "1978     32,000
> "1979     Expects somewhat less than 1978"

The trial court also determined, however, that no significant evidence was submitted to the court to show what Jerry's income was at the time of the divorce, nor was any evidence introduced to show what Sandra's income, if any, was at that time. The evidence did indicate that since the divorce Sandra had obtained employment which paid a gross salary of $12,800 and that additional income from investment of inherited property increased her gross income to $22,000 per year. Sandra, however, by affidavit introduced schedules indicating that her monthly expenses for the support of the children has significantly exceeded the monthly payments required of Jerry under the 1973 divorce decree. Given the rate of inflation, no economic expert is needed to determine that the $150 Jerry was required to pay per child in 1973, if it was adequate then, is not now adequate. Although the income which Sandra is now receiving, and which she apparently was not receiving in 1973, may also be a change of circumstances, we are not left with a definite and firm conviction that the district court made a mistake in refusing to

reduce the monthly payments Jerry is required to make.[2] *Corbin v. Corbin, supra.*

■ Jerry also takes issue with the trial court's conclusion that accrued child-support payments that have not been paid may not be modified or cancelled retroactively. In *Kinsella v. Kinsella, supra,* this court adopted the rule that accrued but unpaid child-support payments cannot be modified. In *Corbin v. Corbin, supra,* decided by this court on January 24, 1980, we were requested to overrule *Kinsella* but refused to do so, noting that

". . . when a divorced husband believes that there are valid reasons for a reduction in the amount of child support payments, it is not proper for him to use extrajudicial methods, take the matter into his own hands, and arbitrarily reduce the payments without first having made an application to the trial court for a modification of the previous order." 288 N.W.2d at 64.

We further stated:

"Child support payments may be modified by the district court at any time the circumstances render such a change proper, but such modification operates prospectively only." 288 N.W.2d at 64.

■ Finally, Jerry argues that the trial court erred in not granting him custody of the children or at least granting "equal custody" of the children to both parties.[3] He argues that if disagreements cannot be worked out by both parties in the interests of the children and the parties' separate best interests, the disputes should be arbitrated by "an unbiased, nongovernmental, person agreed to by both parties." That would be an ideal situation, one which most judges concerned with domestic disputes would welcome. But if the parties had

been able to settle their disputes or agree to arbitration of their disputes they would not be in court today. A court order requiring the parties to agree is useless if the parties do not agree. Realistically, the courts cannot shirk their duties in deciding cases presented to them by requiring the parties to agree when they do not, in fact, agree. A court order requiring agreement among the parties would quickly return to the court when the parties could not agree as ordered.

We do, however, find merit in Jerry's argument that changed circumstances should result in some change in custody and visitation rights. The trial court determined that the distance between Jerry and the children had changed from zero miles to 350 miles when Jerry moved to Grand Forks in 1973 and increased to 1,000 miles by Sandra's move to Indiana in 1974. As a result, the trial court found an additional, specific visitation provision is appropriate to enable Jerry to maintain a better parent-child relationship beneficial to the children. The trial court urged the parents to be agreeable, flexible, and considerate in arranging visits but, in the absence of their own agreement, ordered that Jerry have visitation rights with the minor children during the first 15 days of August of each year commencing in 1980. The trial court further ordered that transportation to Jerry's place of residence was to be paid by Jerry and transportation from Jerry's place of residence to Sandra's place of residence was to be paid by Sandra.

■ We agree with the trial court's determination that the fact Jerry and Sandra have both moved from Williston has resulted in a material change of circumstances. When both parties lived in Williston it was

---

**2.** Jerry argues that in applying for a modification of the divorce decree it was not his intent to simply reduce child support from $150 per child to $50 per child. Rather, he argues it was his intent that the court order him to support the children only if he had custody of them. That may have been Jerry's intent, but the application for modification of the divorce decree does not reveal that intent.

**3.** By "equal custody" Jerry apparently means that both he and Sandra would have custody of the children. It appears that would mean the children would spend an equal amount of time with each parent. Because of the distance between the place of residence of each parent, and because the children are in school, Jerry conceded in oral argument that the children should remain with one parent during the school year.

not difficult to arrange visitation between Jerry and the children. The distance between the children and Jerry now makes such casual and informal arrangements impracticable. Considering the distance between the parties and the costs of transportation, it appears visits between Jerry and the children, other than formal, arranged visits, are improbable. Direct contact between Jerry and the children for a mere two weeks out of every year is not adequate. The children are of sufficient age that a longer separation from Sandra, with whom they have spent most of their time during the past seven years, should not be unduly traumatic. We therefore believe Jerry should be given custody of the minor children for two months during every summer. Because Sandra's income is such that she can sustain the fixed costs of providing a home for the children and because the support payments made by Jerry are ordinarily used for direct expenses of the children, Jerry should not be required to make child-support payments during the months in which he has actual custody of the children.

Accordingly, the order of the district court is modified to give custody of the two minor children to Jerry for two months during every summer, beginning in 1980. The order is further modified to provide that during the two months in which Jerry has actual custody he is not required to make child-support payments. In all other respects the order of the district court is affirmed. The case is remanded to the district court for disposition not inconsistent with this opinion.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.