Peggy L. MEADOWS, Plaintiff
and Appellant,

v.

Clayton J. MEADOWS, Defendant
and Appellee.

Civ. No. 9996.

Supreme Court of North Dakota.

Nov. 23, 1981.

Mary Deutsch Schneider, of Legal Assistance of North Dakota, Fargo, for plaintiff and appellant.

Clayton J. Meadows, defendant and appellee; no appearance or brief.

VANDE WALLE, Justice.

Peggy L. Meadows appealed from a default divorce judgment. We remand with instructions.

Peggy filed a complaint in April 1980 requesting a divorce from Clayton, alleging irreconcilable differences. The complaint requested that Peggy be granted a full and absolute divorce from Clayton; that Peggy be awarded custody of the minor child of the parties, subject to Clayton's reasonable visitation privileges; that Clayton be ordered to pay to Peggy the sum of $150 per month as child support; that each party be awarded sole ownership of all personal property currently in his or her possession; that each party be held responsible for personal debts that have been incurred since the parties separated on May 16, 1978; that the court restore to Peggy her maiden name of Mayhew; and that the court grant such other and further relief as it deemed fair and equitable. Clayton, who had been served with the summons and complaint, did not answer and Peggy proceeded to obtain a default judgment. In July 1980 a hearing on the default proceedings was held. Clayton did not appear personally or by counsel. Peggy testified as to the allegations and requests for relief in her complaint. The trial court granted the absolute decree of divorce to Peggy but it reduced the requested $150-a-month child support to $75 per month; retroactively reduced previously ordered child-support arrearages; refused to allow restoration of Peggy's maiden name; and ordered that she take immediate steps to have the birth certificate of her child changed to show the child's last name as "Meadows" even though the child had never been known by that name.[1]

In this appeal Peggy alleges that the trial court, contrary to Rule 54(c), N.D.R.Civ.P., imposed relief different in kind from that prayed for in the complaint. Peggy also alleges that the trial court's findings of fact and conclusions of law were erroneous in the following respects:

a. The trial judge retroactively modified child support.

b. The prospective child-support award was based upon Clayton's unwillingness to pay support rather than on the interests of the child or Clayton's ability to pay.

c. The trial court had no authority to require Peggy to change the child's birth certificate because it was outside the purview of the court in a default divorce action.

Clayton has made no appearance in this court, either in person or in writing, to contest the appeal.

In Peggy's first issue she argues that Rule 54(c), N.D.R.Civ.P.,[2] prohibits any relief in a default proceeding other than that requested in the complaint. In support of her contention Peggy refers us to our decision in *Mathisen v. Mathisen*, 276 N.W.2d 123 (N.D.1979). In *Mathisen* the complaint asked for custody of the children to be placed with Mr. Mathisen but did not request child-support payments. Mrs. Mathisen defaulted and, at the hearing on the motion for a default judgment, the trial court ordered Mrs. Mathisen to pay $25 per month as child support to Mr. Mathisen. We sustained that judgment, noting that

1. Peggy and Clayton were married in March 1978. Prior to the marriage of the parties, one child had been born of their relationship, April Joy Mayhew, born in April 1975. The child, from birth, bore the name Mayhew and that name was reflected on her birth certificate. Clayton had, however, signed an acknowledgment of paternity in May 1975.

2. Rule 54(c), N.D.R.Civ.P., provides:

"(c) *Demand for Judgment.* A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

the statutes of our State set forth a strong public policy requiring the courts to assure the proper support and maintenance of minor children. We held that Mr. Mathisen's request for custody, when considered with Section 14–05–24, N.D.C.C., which authorizes the district court to compel either of the parties to provide for the maintenance of the children of the marriage, was sufficient notice to Mrs. Mathisen that the district court might order her to provide support payments for her children, and that such order did not violate Rule 54(c). Conceding that the facts in this instance are different from *Mathisen*, Peggy nevertheless argues that the trial court did not give sufficient consideration to the public policy requiring the courts to assure the proper support and maintenance of the minor children when granting a divorce.

In *Mathisen* we made the following observation concerning Rule 54(c):

"The first sentence of Rule 54(c), N.D. R.Civ.P., is premised 'on the belief that it would be fundamentally unfair to give greater or different relief from that prayed for since a defaulting defendant may have relied on the relief requested in the complaint in deciding not to appear and defend the action.' 10 Wright & Miller, Fed.Prac. & Proc.: Civil § 2662, p. 92 [describing F.R.Civ.P. 54(c), which North Dakota adopted without change]." 276 N.W.2d at 128.

■ That statement indicates that the rule is primarily for the protection of a defaulting defendant, not for the benefit of the plaintiff to the action. Peggy argues, with considerable merit, that despite the protection of the defendant provided by Rule 54(c), the rule should not be used as a weapon to reduce the relief requested by the plaintiff where the evidence adduced by the plaintiff justifies such relief. We agree. Rule 55, N.D.R.Civ.P., at subdivision (a)(1) provides that when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise appear and the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain,

the court, upon affidavit and upon production of the written instrument, if any, upon which the claim is founded, may direct the entry of judgment. Subdivision (a)(2) of the rule provides:

"(2) In all other cases, the court, before directing the entry of judgment, shall require such proof as may be necessary to enable it to determine and grant the relief, if any, to which the plaintiff may be entitled. To this end, the court may:

"1. Hear the evidence and assess the damages; ..."

Rules 54 and 55 provide adequate protection to the defendant to prohibit the granting of relief which was not requested in the complaint or the granting of relief which, although requested in the complaint, is not sustained by the evidence. The Rules should not be used to deny a plaintiff the relief which the complaint has requested and which the evidence introduced at the default hearing justifies. To conclude otherwise would permit a defendant to default and thereby prevent a plaintiff from receiving the relief to which that plaintiff is entitled.

■ An examination of the evidence reveals there was no justification for a reduction of the amount of child support requested by Peggy. Rather, the evidence reveals that $150 per month as child support may not be adequate for the best interests of the child. Peggy's income is between $500 and $529 per month and from that amount she must supply food, clothing, and shelter as well as pay her babysitting expenses for the child and the other incidental expenses necessary in raising a child. We agree that the ability of the father to pay child support is also to be considered. However, if Clayton is unable to pay the $150 per month as child support he should appear in court and present evidence to support that fact. One hundred fifty dollars a month child support surely is not excessive in our current economy and, absent evidence to support his inability to pay, Clayton should not be relieved of that obligation by the trial court on its own initiative in a default judgment.

It appears from the transcript of the hearing on the motion for default judgment

that the trial court relied upon previous hearings regarding the temporary support payments. From the remarks of the trial judge we can assume that orders for temporary support were issued which were ignored by Clayton. The trial court's rationale apparently was that Clayton could not pay $150 per month but might be willing and able to pay $75 per month. Although the trial court's rationale might be correct if based upon a record substantiating that conclusion, here there is no record to substantiate the trial court's conclusion. Because this was a default judgment; the request in the complaint was for $150 a month in child support, which is not an unreasonable amount; the evidence introduced by Peggy supported the need for that amount of child support; and there is no evidence in the record to support a conclusion that $75, rather than $150, per month is a proper amount of child support for Clayton to pay, this portion of the judgment rendered by the trial court must be reversed with instructions to enter a judgment requiring Clayton to pay $150 per month in child support. If Clayton is unable to pay that amount he can apply to the court for a modification of the child-support payment by showing a material change in circumstances. See, e. g., *Nugent v. Nugent*, 152 N.W.2d 323 (N.D.1967).

◼ Peggy also alleges as error the action by the trial court in reducing, retroactively, Clayton's accrued child-support obligations. The trial court, in addition to reducing the prospective child-support payments requested by Peggy in her complaint from $150 to $75 per month, also reduced the past payments of $150 per month, which Clayton had not made, to $75 per month. We agree that this action by the trial court was in error. The delinquent support payments were not referred to in Peggy's complaint and therefore were not a part of the proceeding. Thus the trial court, without any request from Clayton, retroactively modified the support payments. More significantly, however, in *Kinsella v. Kinsella*, 181 N.W.2d 764 (N.D.1970), this court adopted the rule that accrued but unpaid child-support payments cannot be modified. Although we have been asked to overrule

*Kinsella*, we have refused to do so. *Corbin v. Corbin*, 288 N.W.2d 61 (N.D.1980). We have continued to apply the rule. *Gasser v. Gasser*, 291 N.W.2d 272 (N.D.1980). The findings of fact and conclusions of law by the trial court indicate that Clayton executed an offer of judgment on September 21, 1979, pursuant to Rule 68(a), N.D.R. Civ.P., in which he agreed that a judgment could be entered requiring him to pay $150 per month for child support. A judgment requiring Clayton to pay $150 per month was entered on September 25, 1979, but, according to the findings and conclusions, Clayton had paid only $50 as of the time of the default divorce proceedings in October 1980. After reciting these facts the trial court concluded that because Clayton "has exhibited an unwillingness to pay the ordered amount" it is "retroactively reduced to $75.00 per month child support." This was error on the part of the trial court. Not only does it violate the rule that accrued but unpaid child-support payments cannot be modified, but unwillingness to pay, without more, cannot be a valid reason for the court's refusing to order child-support payments or for reducing such payments. The provision of the judgment reducing, retroactively, the delinquent child-support payments is reversed and the trial court is directed to delete that provision from the judgment.

◼ Peggy attacks as error the trial court's order that the child's surname be changed from Mayhew to Meadows. The child's name was listed as Mayhew on the birth certificate and Peggy continued to use that name for her daughter. The complaint did not request a change of the child's surname, and because Clayton did not appear in the proceedings it is apparent that he did not request the name change. The findings of the trial court are silent with regard to this matter. The conclusions of law contain the following provision:

"Immediate steps shall be taken to change the birth certificate of the minor child so as to reflect her correct surname of Meadows, which is the name of the Defendant, the acknowledged father."

The transcript of the default-judgment proceedings reflects that the trial court was

relying upon an acknowledgment of paternity executed by Clayton on May 23, 1975, prior to the time Peggy and Clayton were married, which statement, in addition to acknowledging paternity, contained an agreement that Clayton be recorded as the father on the child's birth certificate. In addition, in the offer of judgment executed by Clayton on September 21, 1979, Clayton agreed that he be named the father of the child, and the judgment entered pursuant to the offer of judgment specifies that Clayton is "the father of April Meadows a/k/a April Mayhew, a minor child, . . ."

Section 23–02.1–13(5), N.D.C.C., governs the birth registration of a child not born during the marriage of the mother. That section provides that the name of the father shall not be entered on the birth certificate unless certain conditions are met.[3] We need not decide if the conditions prescribed by that section are met, if Clayton's name should appear on the birth certificate as the child's father, or if the child's surname should be Meadows rather than Mayhew. Those questions may arise in another action. For our purposes it is sufficient to note that the complaint did not request a change in the child's surname and contains only an allegation that Clayton had admitted his paternity. Clayton defaulted and obviously did not request that the child's surname be changed on the birth certificate to Meadows. The action taken by the trial court was voluntary. The matter of the child's surname was not part of the proceedings before the trial court and the trial court's action was contrary to Rule 54(c), N.D.R.Civ.P. Therefore, that portion of the judgment relating to the child's birth certificate must be deleted.

 Finally, Peggy argues that the trial court should have granted the request in her complaint to change her surname from Meadows to her maiden name of Mayhew. Section 14–05–02, N.D.C.C., provides, in part, that the effect of a judgment decreeing a divorce is to restore the parties to the state of unmarried persons. Although we do not hold that a decree of divorce automatically restores to the wife her maiden name, such a request may be made and granted in divorce proceedings. 24 Am. Jur.2d, *Divorce and Separation*, § 882, p. 1002. The record does not clearly reflect the reasoning of the court in denying Peggy's request to resume her maiden name. Perhaps the trial court believed that it would not be proper for Peggy's surname to be changed to Mayhew if the child's surname were to be Meadows. We have held above that the trial court erred in ordering that the child's surname be changed from Mayhew to Meadows. Having reached that conclusion, we see little reason for refusing Peggy's request to resume her maiden name. Again, because of his default, Clayton has not objected. We therefore direct that the judgment be modified to permit Peggy to resume her maiden name.

We remand this matter to the district court with instructions to order the entry of a judgment in accordance with this opinion.

ERICKSTAD, C. J., and SAND and PEDERSON, JJ., concur.

PAULSON, J., disqualified.

---

3. Subsection 5 of Section 23–02.1–13 reads:
"5. If the child is not born during the marriage of the mother, or within three hundred days after any such marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court, the name of the father shall not be entered on the birth certificate unless:
"a. After the child's birth, the father and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and:
"(1) He has acknowledged his paternity of the child in writing filed with the state registrar,
"(2) With his consent, he is named as the child's father on the child's birth certificate, or
"(3) He is obligated to support the child under a written voluntary promise or by court order; . . ."