Sharon VANDE HOVEN, now known
as Sharon Randall, Plaintiff
and Appellant,

v.

Michael VANDE HOVEN,
Defendant and Appellee.

Civ. No. 11197.

Supreme Court of North Dakota.

Jan. 20, 1987.

Richard J. Linnerooth, Fargo, for plaintiff and appellant.

Ella Van Berkom, Minot, for defendant and appellee.

LEVINE, Justice.

Sharon Randall (formerly Vande Hoven) appeals from a supplemental judgment which amended the visitation provisions of a decree granting her a divorce from Michael Vande Hoven. The supplemental judgment also sets forth self-executing contempt penalties if Sharon fails to comply in the future with the new visitation provisions. We affirm in part and reverse in part.

Sharon and Michael were divorced on January 18, 1984. Sharon was awarded custody of the couple's five minor children and received a property settlement of $125,000, payable by Michael over a ten-year period. During the divorce trial, Sharon alleged that Michael had sexually abused two of the children. The court found, however, that Sharon had "failed to sustain the burden of proof concerning those allegations," and granted Michael unsupervised visitation. Sharon did not appeal from the divorce judgment. In May 1984, Michael was tried for the criminal charge of gross sexual imposition involving the two children and was acquitted by a jury. Both parties subsequently remarried and Sharon has moved to California with the children.

During the summer of 1984 Michael brought a motion requesting that Sharon be found in contempt for failure to comply with the visitation provisions and that his visitation rights be structured. Sharon did not appear at the hearing, and in a supplemental judgment dated September 13, 1984, the court denied the contempt motion but structured Michael's visitation rights. The court ordered that Michael have six weeks of visitation with the children every summer in North Dakota; that he have one week of visitation during alternate Christmas holidays in either North Dakota or California; that he be allowed to visit the children in California upon 24 hours notice to Sharon; and that the costs for transporting the children for visitation purposes were to be paid by Michael. No appeal was taken from this judgment.

Michael continued to encounter problems exercising his visitation rights, and he brought a motion seeking custody of the children. Following a hearing on January 9, 1986, during which Sharon did not appear in person or through counsel, the

court denied Michael's motion.[1] The court, however, ordered that Michael have visitation with the children during the month of July and the first two weeks of August every year, and one week during every Christmas holiday. The court also ordered that Sharon pay all transportation costs for the children to travel from California to North Dakota and return. The court did not find Sharon in contempt for previous failures to comply with the visitation provisions of the original divorce decree or the September 1984 supplemental judgment, but ordered that:

"3) In the event the Plaintiff [Sharon] fails to abide by the visitation set forth herein, the Plaintiff shall be held in contempt of court and shall be fined the amount of Five Thousand Dollars ($5,000) for each time that she fails to deliver the children to visit the Defendant [Michael] for the visitations set forth above. In the event Plaintiff fails to pay said sum of money, then the Defendant may subtract said sum of money from the amount that he owes the Plaintiff as a property settlement which was granted to her in the original divorce Judgment;

"4) In the event Plaintiff fails to abide by this Court's present visitation Order for a period of two (2) years, that is, for the years of 1986 and 1987, then the Plaintiff shall forfeit in toto the property settlement previously awarded to her. In the event the Plaintiff elects to ignore this visitation Order for a period of two (2) years, the Order shall be filed or recorded, whichever it takes, and shall totally exonerate the property settlement; that is to say, the debt and/or mortgage owed by the Defendant to the Plaintiff as a result of the property settlement shall be wiped out and the Defendant shall owe absolutely nothing;

\*    \*    \*    \*    \*    \*

"The Order entered herein shall be a final Order to exonerate the debt against the Defendant's property in the event the Plaintiff elects the next two (2) years to withhold the above-stated visitation rights to the Defendant."

On appeal from this supplemental judgment, Sharon asserts that the district court did not have the authority under state law to assess self-executing prospective contempt penalties for future violations of the court's January 1986 judgment. We agree.

■ Although criminal and civil contempts committed in the presence of the trial court may be punished summarily, where the alleged contemptuous conduct occurs out of the court's presence, the one charged must be afforded a full opportunity to appear, explain, and defend, and is entitled to a presumption of innocence. *LePera v. Snider*, 240 N.W.2d 862, 867 (N.D.1976). These guarantees of notice and an opportunity to be heard are implemented in this state through comprehensive procedural schemes governing the adjudication and punishment of both civil contempts [*see* Chapter 27–10, N.D.C.C.] and

---

**1.** The district court found that it had "jurisdiction of the parties and the subject matter." Neither party has asserted that the district court lacked jurisdiction under the provisions of the Parental Kidnapping Prevention Act (PKPA) [28 U.S.C. § 1738A] and the Uniform Child Custody Jurisdiction Act (UCCJA) [Chapter 14–14, N.D.C.], or that North Dakota is an inconvenient forum to litigate Michael's motion. *See generally Dahlen v. Dahlen*, 393 N.W.2d 765 (N.D.1986); *Dennis v. Dennis*, 387 N.W.2d 234 (N.D.1986); *Dennis v. Dennis*, 366 N.W.2d 474 (N.D.1985). The record reflects that in the interim between the September 1984 supplemental judgment and the January 1986 proceedings, Sharon instituted proceedings against Michael in California. In an order issued December 21, 1984 by the Superior Court of California, County of Butte, the court found that it had concurrent jurisdiction with North Dakota under California's codification of the UCCJA, but declined to exercise its jurisdiction in the case. In view of § 14–14–03(1)(d), N.D.C.C., and the California court's refusal to exercise jurisdiction in the prior proceeding, as well as the district court's express consideration and assumption of jurisdiction, we conclude that the district court properly exercised jurisdiction in this case.

criminal contempts [*see* § 12.1–10–01, N.D. C.C., and Rule 42(b), N.D.R.Crim.P.].

■ The district court's January 1986 judgment disregards these provisions regulating the procedure for adjudicating and punishing a contempt of court. Indeed, it appears from the wording of the court's order that a formal contempt action would not be necessary and that Michael would himself have the power to "adjudicate" whether Sharon's possible future violations of the visitation provisions constitute punishable acts of contempt. A court in this state may not use a self-executing order to delegate to a private party its adjudicatory contempt powers for future violations of that order. *See Gaschk v. Kohler,* 70 N.D. 358, 294 N.W. 441 (1940); § 27–10–14, N.D. C.C.

Moreover, the court assessed against Sharon a $5,000 "fine" for each future violation of the visitation provisions which, if not paid, Michael would be allowed to deduct from his debt on the property settlement. The court further ordered that if Sharon refuses to allow visitation for a two-year period, Michael's remaining debt on the property settlement would be totally exonerated. Pursuant to § 27–10–04(1), N.D.C.C., a person found guilty of civil contempt may be fined $250 over and above the costs and expenses of the proceedings; imprisoned for six months; or if "[a]n actual loss or injury has been produced to any party by the misconduct of such person, the court or judge, instead of imposing a fine upon him, shall order him to pay a sufficient sum to indemnify such party, and to satisfy the costs and expenses of such

party." In *Noble Tp. v. Aasen,* 10 N.D. 264, 86 N.W. 742, 746 (1901), this court stated that "the law of this state does not, in contempt proceedings, permit sums of money in amounts arbitrarily fixed by the court to be paid over by one suitor to another under the compulsion of an order of the court. The amount to be paid over must in some way be ascertained judicially, and this means that the same must be ascertained by a consideration of testimony bearing upon the matter." Other courts have found prospective contempt fines unauthorized under their state statutory schemes, noting as their principal defect the rigid and arbitrary character of the amount selected, which is fixed in advance of hearing any evidence on the character or severity of the alleged violation. *See Wilson v. Fenton,* 312 N.W.2d 524 (Iowa 1981); *Vincent v. Preiser,* 338 S.E.2d 398 (W.Va. 1985); *State v. Pownal Tanning Co.,* 142 Vt. 601, 459 A.2d 989 (1983).

■ The court's order in this case amounts to an adjudication in advance of future acts of contempt by Sharon, without any provision for formal due process, and an assessment of arbitrary "fines" payable to Michael without hearing any evidence on whether that amount is at all proportional to Michael's actual damages. The court had no statutory authority to fashion such an order.[2] We conclude that the district court erred in assessing self-executing prospective contempt penalties for future violations of the court's January 1986 judgment, and we therefore reverse that portion of the supplemental judgment.[3]

Sharon also asserts that the district court had no authority under Rule 7(b),

**2.** Michael has not asserted that the statutory scheme regulating the adjudication and punishment of contempts of court constitutes an invalid restriction on a court's inherent contempt powers, and we decline to address the issue.

**3.** Because we have concluded that the district court had no authority to assess a self-executing prospective contempt penalty for future violations of the court's order, we need not determine whether, upon the holding of a formal contempt hearing, the court could properly order that the amount assessed as a fine or indem-

nification be deducted from the debt Michael owes pursuant to the property settlement under traditional notions of set-off [*see Bosch v. Bosch,* 197 N.W.2d 673 (N.D.1972), and § 28–20–33, N.D.C.C.], or whether a total exoneration of Michael's debt under the property settlement for Sharon's failure to abide by the visitation provisions for a two-year period would constitute an invalid modification of a final distribution of property [*see, e.g., Chinn v. Chinn,* 394 N.W.2d 692 (N.D.1986) ].

N.D.R.Civ.P.,[4] to amend Michael's visitation rights and assess all transportation costs against her because the only relief sought by Michael's motion was a change of custody. We disagree.

In *Mathisen v. Mathisen*, 276 N.W.2d 123 (N.D.1979), the wife argued that, because the husband's divorce complaint and prayer for relief requested only that he be awarded custody of the couple's children, the district court was without jurisdiction in a subsequent default divorce hearing to order her to make child support payments to her husband. Noting that the purpose of Rule 54(c), N.D.R.Civ.P.,[5] is to apprise a defendant of the relief which the court might grant upon default, this court concluded that the husband's prayer for custody, when considered with § 14–05–24, N.D.C.C., which authorizes the court to compel either party to provide for the maintenance of the children of the marriage, was sufficient notice to the wife that the district court might order her to provide support for her children. *Mathisen, supra,* 276 N.W.2d at 128. We believe that the same rationale controls in this case.

■ The issue of visitation rights of the noncustodial parent is a part of the broader issue of child custody. *Mathisen, supra,* 276 N.W.2d at 129. *See also* § 14–14–02(2), N.D.C.C. [" 'Custody determination' means a court decision and court orders and instructions providing for the custody of a child, including visitation rights;"]. Likewise, we believe that, especially in cases involving an interstate custody dispute, assessment of transportation costs against either party for facilitation of visitation is a necessary incident to the issue of visitation rights.

■ The paramount purpose of Rule 7(b), N.D.R.Civ.P., as well as the other procedural rules governing pleadings and motions, is to inform a party of the nature of the claims being asserted against him and the relief demanded by his adversary. *See* 5 Wright & Miller, Fed.Prac. & Proc.: Civil § 1182, p. 12 (1969); *cf. Suko v. Suko,* 304 N.W.2d 690, 693 (N.D.1981). We further recognize that Rule 54(c), N.D.R. Civ.P., is primarily for the protection of a defaulting party and is premised on the belief that " 'it would be fundamentally unfair to give greater or different relief from that prayed for' " since a defaulting party may have relied on the relief requested in deciding not to appear and defend the action. *Meadows v. Meadows,* 312 N.W.2d 464, 466 (N.D.1981) [quoting 10 Wright & Miller, Fed.Prac. & Proc.: Civil § 2662, p. 92]. However, because assessment of transportation costs is incidental to the issue of visitation rights, and because visitation rights are a part of the broader issue of child custody, we cannot say that the court's assessment of transportation costs and modification of visitation rights constitute relief "different" than that prayed for within the meaning of the rules. Nor can we say that amending visitation rights and assessing transportation costs against

4. Rule 7(b), N.D.R.Civ.P., provides:
   *"(b) Motions and Other Papers.*
   "(1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefore, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.
   "(2) The rules applicable to captions and other matters of form of pleadings apply to all motions and other papers provided for by these rules.
   "(3) All motions must be signed in accordance with Rule 11.

   "(4) A motion to vacate or modify a provisional remedy shall have preference over all other motions."

5. Rule 54(c), N.D.R.Civ.P., provides:
   *"(c) Demand for Judgment.* A judgment by default may not be different in kind from or exceed the amount prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

Sharon amounts to an award of "greater" relief to Michael than if he had been awarded custody of the children. We conclude that Michael's motion seeking a change of custody was sufficient to apprise Sharon of possible modification of his visitation rights and assessment against her of transportation costs to facilitate visitation.

Sharon next asserts that the court erred in amending the decree to allow Michael unsupervised visitation with the children for six weeks during the summer and one week during Christmas. Sharon relies on evidence of sexual abuse which was presented during the original divorce hearing. The January 1984 divorce judgment, from which Sharon did not appeal, granted Michael unsupervised visitation. The September 1984 supplemental judgment also allowed Michael unsupervised visitation and added a provision that he have visitation six weeks during the summer and one week during alternate Christmas holidays. Sharon made no appearance during this proceeding and took no appeal from the judgment. The January 1986 supplemental judgment, from which the present appeal was taken, differs minimally from the September 1984 judgment with regard to Michael's visitation rights. The judgment again allows six weeks of unsupervised visitation during the month of July and the first two weeks of August, but provides that Michael's one week of visitation during the Christmas holiday would no longer alternate every other year.

■ On an appeal from a judgment modifying a divorce decree, the appellant cannot obtain review of the original divorce proceedings or previous modification proceedings. *See Gasser v. Gasser,* 291 N.W.2d 272, 274 (N.D.1980). The issue whether the court erred, because of the allegations of sexual abuse, in allowing Michael unsupervised visitation for six weeks during the summer is therefore not properly before us in this appeal. Accordingly, because the only change from the previous modification involves the court's refusal to

alternate Christmas holiday visitations and the assessment of transportation costs against Sharon, we limit our review to those issues.

■ A trial court's decision to modify custody and visitation rights is subject on appeal to the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. *See Persons v. Persons,* 396 N.W.2d 744, 745 (N.D.1986); *Quirk v. Swanson,* 368 N.W.2d 557, 560 (N.D.1985). Upon our review of the record, we cannot say that the trial court's decision granting Michael one week of visitation during every Christmas holiday is clearly erroneous.

■ Sharon asserts that the trial court erred in assessing transportation costs for visitation against her. The September 1984 supplemental judgment assessed all transportation costs for visitation against Michael. The record of the January 1986 hearing contains evidence that Michael took several trips to California in an attempt to exercise his visitation rights. These attempts at visitation were, for the most part, thwarted by Sharon. The record also reflects that Michael is presently undergoing some financial difficulties in his farming operations. In view of this evidence, we conclude that the trial court's assessment of transportation costs against Sharon is not clearly erroneous.

In accordance with this opinion, that part of the district court's supplemental judgment assessing self-executing prospective contempt penalties against Sharon for future violations of the visitation provisions is reversed. The judgment is in all other respects affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

MESCHKE, Justice, concurring.

I share the trial court's frustration in trying to enforce visitation rights against a recalcitrant parent now living in another

state. While I agree with Justice Levine that assessment of self-executing prospective contempt penalties for future violations of a visitation decree is not appropriate, I also think that there must be other and better ways to enforce visitation than through the statutory contempt procedure. Consider, for example, *Gravning v. Gravning*, 389 N.W.2d 621 (N.D.1986). I hope that neither the practicing bar nor the trial courts read this decision as foreclosing other approaches which we do not consider today.