**STATE BANK OF BURLEIGH COUNTY TRUST COMPANY, a North Dakota Banking Corporation, Plaintiff, Appellee, and Cross-Appellant,**

v.

**Virgil A. JOHNSON, Marie A. Johnson, Grant Krebs, Jeanette Krebs, John E. Schultz, Marylin Schultz, Whey-to-Go, Inc., Capitol City Cheese, Inc., Wishek Cheese Co., Inc., Timber Lake Cheese Co., Inc., Cheese Hauling, Inc., and Selfridge Cheese Co., Inc., Defendants,**

**Robert Streeter and Twin Dakotas Dairy Corporation, Inc., Appellants and Cross-Appellees.**

Civ. No. 9865.

Supreme Court of North Dakota.

March 12, 1981.

As Corrected March 25, 1981.

Wheeler, Wolf, Peterson & McDonald, Bismarck, for plaintiff, appellee and cross-appellant; argued by David L. Peterson, Bismarck.

Fleck, Mather, Strutz & Mayer, Bismarck, for appellants and cross-appellees; argued by Gary R. Wolberg, Bismarck.

Thomas F. Kelsch, Bismarck, and William C. Kelsch, Mandan, for defendant Whey-to-Go, Inc.

ERICKSTAD, Chief Justice.

Appellants, Robert Streeter and Twin Dakotas Dairy Corporation (Streeter), appeal from an order of the District Court of Burleigh County directing the receiver of Whey-to-Go Corporation, to pay to the State Bank of Burleigh County Trust Company the sum of $59,089.34, and from the order of the court denying their motion to have the previous order declared void. Streeter contends that the district court did not have jurisdiction of the person or the subject matter, and, furthermore, that the order was contrary to the evidence. The bank cross-appeals from the order of the district court granting Streeter additional time for filing his appeal pursuant to Rule 4 of the North Dakota Rules of Appellate Procedure. We affirm the orders of the district court.

This action was instituted by the bank in the District Court of Burleigh County. The main defendant was Whey-to-Go. Whey-to-Go had executed promissory notes and had defaulted on the notes. Whey-to-Go was placed in receivership by the court. The receiver was ordered to sell the stock or assets of Whey-to-Go.

On December 11, 1979, Robert Streeter, doing business as Twin Dakotas Dairy Corporation, Inc., offered to purchase the corporate stock, assets, and liabilities of Whey-to-Go and to assume the unsecured debts of Whey-to-Go subject to his right to compromise, contest, or settle the unsecured debts. He offered to pay the principal on the notes amounting to $2,246,644.39 and interest on the notes from their date to the date of commencement of the action by the bank, March 27, 1979. To show his good faith, Streeter placed $10,000 with the bank.

On December 14, 1979, all parties, including Streeter, entered into an agreement whereby Streeter agreed to pay the principal amount due on the notes and interest which had accrued up to March 27, 1979. Streeter also agreed to pay interest on the notes from December 15, 1979, up to the date the cash was delivered to the bank. If the amount due were not paid by December

31, 1979, the agreement and court's order was to be null and void.

This agreement was amended on December 31, 1979, when Streeter encountered problems with financing. The amendment deleted the null and void language and allowed the payment date to be extended until February 29, 1980. The amendment also required Streeter, his wife, and Twin Dakotas Dairy to jointly and severally execute a promissory note for $2,650,000. Additionally, the amendment provided:

"IT IS FURTHER AGREED that as further consideration for this additional extension of time, the purchaser agrees to pay interest at the rate of 16% on the principal of each of those notes which are specifically and separately listed in paragraph 1 of the original agreement in the sums of $1,674,124.08, $179,990.05, $272,530.26, and $120,000.00 respectively, the total thereof on which the interest will accrue is $2,246,644.39."

This interest in the amount of $59,089.34 was paid to the bank on February 29, 1980. At that time, Streeter's coin collection, which had been held as collateral for the payment of the interest, was released to him.

Subsequently, on February 12, 1980, Streeter petitioned the court to order the receiver to sell the assets for $2,650,000 free and clear from all judgments, liens, taxes, claims, and debts, as the Small Business Administration guaranty of the revenue bonds needed by Streeter to acquire the capital necessary to purchase the assets included a maximum dollar limitation of $2,650,000. This petition was granted and on February 23, 1980, the court ordered the sale of the assets for $2,650,000.

This order included the following language:

"5. That upon Twin-Dakotas' failure to pay the purchase price for the assets of Whey-To-Go, Inc. by March 7th, 1980 (unless a later date is agreed to by the parties and ordered by this Court), the $10,000 earnest money deposited by him with the Bank of Burleigh County shall be forfeited and applied against the cost of administration of the Receivership and this Order shall be of no further force and effect and the rights of the parties shall be determined in accord with the previous agreement of December 14, 1979, as amended by agreement dated December 28, 1979.

"Dated this 23rd day of February, 1980."

The March 7th deadline for payment was extended to coincide with the issuance of the revenue bonds. Streeter was finally able to get the capital necessary and transferred the $2,650,000 to the receiver. He argued, however, that the $59,089.34 in interest he paid previously should be credited against the $2,650,000. The bank disagreed and contended that the promissory note and interest which Streeter agreed to pay was a side agreement and not made void by the order of the court dated February 23, 1980. After a hearing on June 17, 1980, the court concluded that the bank was entitled to the additional interest and ordered the receiver to pay to the bank the $59,089.34 he had held in an escrow account and not credit the interest payment against the purchase price. This order was dated July 1, 1980.

On August 13, 1980, Streeter made a motion for relief from the July 1, 1980, order asserting that the court lacked jurisdiction to enter that order. The district court wrote a memorandum opinion dated September 23, 1980, denying the motion. The order denying the motion was dated October 1, 1980. On September 26, 1980, Streeter made a motion to extend the time for filing notice of appeal from the July 1, 1980, order as his attorney erroneously believed that the motion for relief would hold the appeal date from the order of July 1, 1980, in abeyance. The court granted this motion.

Streeter appeals from the order of July 1, 1980, directing payment of $59,089.34 to the bank, and from the order entered October 1, 1980, denying Streeter's motion to have the July 1, 1980, order declared void. The bank cross-appeals from the order allowing Streeter additional time for filing his appeal from the July 1, 1980, order.

On appeal, Streeter raises the following issues:

"I. Did the trial court have jurisdiction over the subject matter upon which this appeal is based and over the persons of Robert Streeter and Twin Dakotas Dairy Corporation, Inc.?

"II. If the trial court did have jurisdiction over the subject matter and the persons of Robert Streeter and Twin Dakotas Dairy Corporation, Inc., was its memorandum opinion dated June 23, 1980, contrary to the evidence?"

The bank, in its cross appeal, asserts that the court abused its discretion when it extended the time in which Streeter was allowed to appeal from the order dated July 1, 1980.

### I. Timeliness of Appeal

■ Notice of appeal must be filed within 60 days of the date of the service of notice of entry of the order appealed from. Rule 4(a), N.D.R.App.P. Upon a showing of excusable neglect, however, the trial court may extend the time for filing notice of appeal. *Id.* Such a motion is addressed to the discretion of the trial court.

We believe Moore's Federal Practice is particularly applicable to what is considered "excusable neglect" pursuant to Rule 4(a). It reads: "While ordinarily mere ignorance of the law or of the rules is not considered to be excusable, some decisions have upheld the grant of extensions when failure to appeal within time has been caused by a plausible misconstruction of the rules." 9 Moore's Federal Practice ¶ 204.13 at 4–96 to 97 (2d ed. 1980) (Footnotes omitted.).

In this case, the attorney who represented Streeter at the hearing of June 17, 1980, referred the case to a different firm after the July 1, 1980, order. The new attorney filed a Rule 60(b) motion for relief from the July 1, 1980, order alleging a lack of jurisdiction. In his affidavit seeking additional time, he said he initially, erroneously believed that the 60(b) motion tolled the time for filing a notice of appeal. It was within the trial court's discretion to determine whether or not such a belief was "excusable neglect" justifying additional time for filing the notice of appeal. The motion for an extension of time, the hearing, and the decision on the motion were all accomplished within the 30-day, additional period permitted under Rule 4(a), N.D.R.App.P. Under the circumstances, we conclude that the trial court did not abuse its discretion. *Dehn v. Otter Tail Power Company*, 248 N.W.2d 851 (N.D.1976); *Wansor v. George Hantscho Co., Inc.*, 570 F.Supp. 1202 (5th Cir. 1978).

### II. Jurisdiction of the District Court

Streeter alleges that the District Court of Burleigh County had neither personal nor subject matter jurisdiction over the dispute between the bank and himself over the payment of interest in the amount of $59,-089.34.

### A. Personal Jurisdiction

■ Streeter asserts that the district court did not have personal jurisdiction as no pleading named him as a party to the action.

Acquisition of personal jurisdiction is governed by Rule 4 of the North Dakota Rules of Civil Procedure. Rule 4(b)(4) provides:

"(4) *Acquisition of Jurisdiction.* A court of this state may acquire personal jurisdiction over any person through service of process as provided in this rule or by statute, or by voluntary general appearance in an action by any person either personally or through an attorney or any other authorized person."

In this case, Streeter made several petitions to the court for its approval of the sale; he also made a general appearance at the hearing which was held to determine who was entitled to the $59,089.34. The first time the issue of jurisdiction was raised was on the motion for relief from the order. It is clear that Streeter personally made a voluntary general appearance before the court. Therefore, the district court

had personal jurisdiction over him. The district court, however, must have jurisdiction over both the person and the subject matter.

### B. Subject Matter Jurisdiction

Streeter contends that the district court did not have jurisdiction over the subject matter or the power to enter the July 1, 1980, order. We do not agree.

This action was properly begun by the bank with service of summons and complaint upon the defendant debtors. Rule 3, N.D.R.Civ.P. The complaint asked that the defendant corporation be placed in receivership and this was done. Section 32–10–01, N.D.C.C., governs the appointment of a receiver. In this case, it is apparent that Whey-to-Go was insolvent and that the receiver was properly appointed. The receiver is under the complete control of the court. § 32–10–04, N.D.C.C.

Streeter petitioned the court to allow him to purchase the assets of Whey-to-Go. When the dispute arose over the interest an agreement was entered into which was signed by an officer of the bank, by the receiver, and by Streeter on behalf of Twin Dakotas Dairy. This agreement reads in part:

"WHEREAS, There is a dispute between Twin Dakota Dairy and the Bank, over whether this sum should be credited against the $2,650,000.00 purchase price;

"NOW, THEREFORE, the parties do agree that Twin Dakota Dairy will pay to the Receiver, the full purchase price of $2,650,000.00, and that the Receiver shall withhold the sum of $59,089.34 from the $2,404,806.84 to be held by the Receiver pending a later determination by the Court as to whether Twin Dakota Dairy is entitled to credit for said $59,089.34 against the total purchase price in exchange for the $59,089.34 now in possession of the Bank."

Following the execution of the agreement, $59,089.34 was delivered to the receiver. When that was done, the receiver became responsible for this money. He could not distribute this money without the court's permission.

As the district court is a court of general jurisdiction, it clearly has jurisdiction over the subject matter. The receiver acts under supervision of the district court. Rule 66, N.D.R.Civ.P.[1]

Streeter petitioned the court numerous times, and generally appeared and actively participated in the hearing which was held to determine the issue of the interest he voluntarily placed in the hands of the court. Now, after having received an adverse decision, he complains that the court does not have jurisdiction. In our view, when he voluntarily placed the money with the receiver and agreed that the court should determine its rightful owner, he waived any right he may have otherwise had to have had the proceedings over the interest initiated by a summons and complaint.

### III. Weight of the Evidence

Streeter's final assertion is that the court's memorandum opinion was contrary to the evidence. He argues that the order of the court entered February 23 voided the agreement of December 14 as amended by the December 31, 1979, agreement, and that he had no obligation to pay that interest if the deal went through, as the order of February 23 provided different terms.[2]

---

**1.** "RULE 66. RECEIVERS APPOINTED BY DISTRICT COURTS

"An action wherein a receiver has been appointed shall not be dismissed except by order of the court. A foreign receiver shall have capacity to sue in any district court but his rights are subordinate to those of local creditors. The practice in the administration of estates by receivers or by other similar officers appointed by the court shall be in accordance with the appropriate statute of this state and the practice heretofore followed in the courts of this state or as provided in rules promulgated by the district courts. In all other respects the action in which the appointment of a receiver is sought or which is brought by or against a receiver is governed by these rules." Rule 66, N.D.R.Civ.P.

**2.** "5. That upon Twin-Dakotas' failure to pay the purchase price for the assets of Whey-To-Go, Inc. by March 7th, 1980 (unless a later date is agreed to by the parties and ordered by this

The parties had previously agreed to extend the date of payment by their amendment to their agreement dated December 31, 1979. In that amendment, the parties expressly stated that "as further consideration for this additional extension of time, the purchaser [Streeter] would pay interest on the notes." [3]

Pursuant to the amendment, Streeter executed the promissory note, and, in that note, Streeter promised to pay interest at the rate of 16% on the notes from January 1, 1980, until February 29, 1980. The $2,650,000 note was only to become payable if the purchase was not made for any reason attributable to Streeter if the bond issue was approved. The payment of interest was not contingent on the purchase.[4]

Streeter argues that the order of the court dated February 23, 1980, extending the date under new terms, vitiated his obligation under the agreement dated December 14, 1979, as amended on December 31, 1979. The record discloses, however, that Streeter paid to the bank $59,089.34, the interest due on February 29, 1980. Streeter did not raise any objection to paying the interest at that time.

The district court determined that "the agreements are themselves clear and unambiguous and there is nothing in them to suggest in any way that the agreement to pay the interest was in any way conditional." The court also determined that the payment was in consideration of extending the time for performance, that the exten-

---

Court), the $10,000 earnest money deposited by him with the Bank of Burleigh County shall be forfeited and applied against the cost of administration of the Receivership and this Order shall be of no further force and effect and the rights of the parties shall be determined in accord with the previous agreement of December 14, 1979, as amended by agreement dated December 28, 1979.

"Dated this 23rd day of February, 1980."

3. "IT IS FURTHER AGREED that as further consideration for this additional extension of time, the purchaser agrees to pay interest at the rate of 16% on the principal of each of those notes which are specifically and separately listed in paragraph 1 of the original agreement in the sums of $1,674,124.08, $179,-990.05, $272,530.26, and $120,000.00 respectively, the total thereof on which the interest will accrue is $2,246,644.39.

"That the aforesaid promissory note will be made as a note of the purchaser's corporation and will be endorsed by the purchaser and his wife JoAnne Streeter.

"2. That the purchaser further agrees as additional consideration for an extension of time for securing the funds for payment of this purchaser offer, and hereby does agree to guarantee payment of interest at the rate of 16% on the principal obligation of $2,246,644.39, during the period of the sixty (60) day extension, and as and for further collateral to secure the obligation and payment of said interest amount, he will pledge and surrender possession of his coin collection, or its equivalent, to the plaintiff on the 31st day of December, 1979; and he and his wife will execute any and all pledge documents and security agreements necessary to effectuate a good and valid pledge of said coin collection.

"Dated this 31st day of December, 1979."

4. "AGREEMENT

   *    *    *    *    *    *

"2. That in consideration of a sixty (60) day extension of the date for payment, the parties hereto agree that:

"(a) The lenders will grant a sixty (60) day extension, and Robert R. Streeter and JoAnne Streeter, d/b/a Twin Dakotas Dairy Corp., Inc., for and in consideration for that extension agreement, will execute a promissory note in the sum of $2,650,000.00, with interest accruing at the rate of 16% on $2,246,644.39, between the dates of January 1, 1980, and February 29, 1980, and that said note will be a note of the corporation and will be endorsed by Robert R. Streeter and JoAnne Streeter, and that further, Twin Dakotas Dairy Corp., Inc., Robert R. Streeter and JoAnne Streeter will unconditionally and in all events guarantee payment of the 16% interest on the $2,246,644.39 amount during the period of time between January 1, 1980, and February 29, 1980, and in order to secure their unconditional guarantee and obligation to pay said interest amount, they will pledge and deliver possession of a certain coin collection, or its equivalent, to the State Bank of Burleigh County Trust Company on the 31st day of December, 1979, and will further agree to execute any and all pledge and security agreements necessary to effectuate a valid pledge of said coin collection.

"(b) That the $2,650,000.00 note will become payable if for any reason attributable to Twin Dakotas Dairy Corp., Inc., or Robert R. Streeter the purchase is not made if the bond issue is in all respects approved and validated.

"Dated this 31st day of December, 1979."

sion was observed, that the interest was earned when the time was extended until February 29, and that no subsequent agreement could alter the fact that Streeter's obligation had become due, payable, and was paid. We agree with the trial court.

The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity. § 9–07–02, N.D.C.C. The language is not unclear that states that, in consideration for the extension of the purchase date, Streeter will pay the interest on the notes at the rate of 16% to the bank. During the time that Whey-to-Go was in receivership, the bank was not receiving interest on the notes. The notes had been guaranteed by the Farmers Home Administration (FHA). A representative of the FHA had also signed the December 31, 1979, agreement between the bank and Streeter as it was the FHA which would be liable, as the guarantor of the notes, for the interest which the bank was losing if someone else did not pay that interest. Streeter, in order to become the ultimate owner of the property, needed the additional time to secure the funding for the purchase. He was successful in securing the funding through the delay, and now is in no position to complain of the cost in interest the delay incurred.

Streeter unconditionally promised to pay the interest in the amount of $59,089.34 if the bank would extend the purchase deadline, and the deadline was extended by the bank. Under these circumstances, it was not error for the court to require the receiver to pay the bank the $59,089.34.

For the foregoing reasons, the orders of the court are affirmed.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.