Kathy QUIRK and Thomas E. Quirk,
Plaintiffs, Appellants, and
Cross-Appellees,

v.

Terrence Lyle SWANSON, Defendant,
Appellee, and Cross-Appellant,

and

Erik Allen Swanson, a minor child,
Defendant and Appellee.

Civ. No. 10848.

Supreme Court of North Dakota.

May 22, 1985.

James Gordon Caldis (argued) of Caldis, Arneson and Tingum, Grand Forks, for

plaintiffs, appellants and cross-appellees Kathy Quirk and Thomas E. Quirk.

Henry H. Howe (argued) of Howe & Seaworth, Grand Forks, for defendant, appellee and cross-appellant Terrence Lyle Swanson.

Damon E. Anderson (argued), Grand Forks, guardian ad litem for defendant and appellee Erik Allen Swanson.

GIERKE, Justice.

This case began with a paternity action. Kathy Quirk, the natural mother of Erik Allen Swanson, and her present husband, Thomas E. Quirk [Tom], instituted an action to determine the paternity of Erik. Both Kathy's present husband, Tom, and her former husband, Terrence Lyle Swanson [Terry], claimed to be the father of Erik. The trial court concluded that *Tom* is the biological father of Erik. The court, however, granted to Terry the right of visitation of Erik for one year from the judgment dated September 5, 1984, with visitation to continue further by agreement of the parties. We affirm the trial court's judgment.

Kathy and Tom appeal to this court from the trial court's ruling, contending that the court should not have granted Terry any right of visitation of Erik. Terry cross-appeals, asserting that neither Kathy nor Tom should have been allowed to challenge the paternity of Erik. He also asserts that the trial court erred in not providing an opportunity for expert witness testimony on the issue of visitation. Terry further contends the court's award of visitation for one year should be extended until Erik reaches the age of 18. It is the position of Erik's counsel that the trial court's judgment should be affirmed.

Kathy and Terry were married in 1975. A daughter, Kelly, was born to them in 1977. Marital difficulties arose between the parties which culminated in the filing of a divorce action on January 4, 1980. According to the testimony, Kathy had developed a relationship with Thomas E. Quirk beginning in December of 1979. Terry and Kathy lived apart from time to time after the divorce was filed. Kathy became pregnant with Erik some time in June of 1980.

A divorce hearing was held on July 24, 1980. However, because Terry and Kathy had reconciled, a judgment was not entered. Erik Allen Swanson was born in February of 1981. When Erik was approximately six months old, Kathy and Terry separated once again. They were divorced in October of 1981. The original divorce judgment granted custody of Kelly and Erik to Kathy, along with the award of support of $250. The judgment provided Terry with visitation rights of both children.

Kathy later married Tom in June of 1982. About a year later, Tom and Kathy challenged the paternity of Erik, asserting that Tom is the biological father of Erik. Tom filed a written acknowledgment of paternity with the State. Tom and Kathy requested the court to terminate Terry's right of visitation. Terry had been presumed to be the father of Erik, pursuant to § 14–17–04(1)(a), N.D.C.C., which states that:

"*14–17–04. Presumption of paternity.*

"1. A man is presumed to be the natural father of a child if:

"a. He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court;"

However, the trial court concluded that the presumption had been rebutted by clear and convincing evidence. The evidence included blood test results which established a high probability that Tom contributed to the genetic pool of Erik. In addition, evidence was presented that Erik has displayed a congenital malformation called "clinodactyly" (an in-turning of the fifth finger), which Tom also has. The court concluded, therefore, that Tom is the biological father of Erik, but it did not completely terminate Terry's right of visitation

of Erik. It amended Kathy's and Terry's divorce judgment to include one year of visitation of Erik, with further visitation by agreement of the parties. The court also ordered the changing of Erik's surname from Swanson to Quirk.

From the time of the divorce to the inception of the paternity action, Terry had paid child support to Kathy pursuant to the terms of the divorce judgment. Kathy and Tom have since offered to return the $4,000 which was paid in support. Terry has regularly exercised visitation of both Kelly and Erik and presently continues to do so.

MOTION TO DISMISS CROSS–APPEAL

■ Tom and Kathy bring a motion to dismiss Terry's cross-appeal. Generally, motions to dismiss are subject to the discretion of this court. *State v. Paulson,* 256 N.W.2d 556, 557 (N.D.1977). This court is reluctant to dismiss an appeal when good cause is demonstrated for failure to comply with the Rules of Appellate Procedure. *State v. Morrissey,* 295 N.W.2d 305, 306–307 (N.D.1980); *Gerhardt v. Fleck,* 251 N.W.2d 764, 766–767 (N.D.1977). However, a motion to dismiss which is based on jurisdictional grounds is not treated with that same discretion. Instead, this court has no choice but to dismiss an appeal which is jurisdictionally defective. *See Kolling v. Goodyear Tire and Rubber Co.,* 272 N.W.2d 54, 59 (N.D.1978); *Braun v. Riskedahl,* 150 N.W.2d 577, 579–580 (N.D. 1967).

■ Rule 4(a) of the Rules of Appellate Procedure provides:

"*(a) Appeals in Civil Cases.* In a civil case the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 60 days of the date of the service of notice of entry of the judgment or order appealed from. If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this subdivision, *whichever period last expires.*" [Emphasis added.]

In the instant case, notice of entry of judgment was served on September 5, 1984. The appellant's notice of appeal was thereafter filed on November 2, 1984, just prior to the expiration of the 60-day limitation of Rule 4(a). According to Rule 4(a), appellee's deadline for filing his cross-appeal is governed by the limitation period which last expired, i.e., either 60 days after service of notice of entry of the judgment or 14 days after the filing of the first notice of appeal. In the instant case, appellee should have filed his notice of cross-appeal within 14 days of the filing of appellant's notice of appeal, which was on November 2, 1984.

Terry argues that 3 extra days should be added to the prescribed period pursuant to Rule 26(c), N.D.R.App.P., which reads:

"*(c) Additional Time After Service by Mail.* If a party is required or permitted to do an act within a prescribed period after service of a paper upon him and the paper is served by mail, 3 days must be added to the prescribed period."

We conclude that Rule 26(c) does not allow the appellee an additional 3 days for the filing of his cross-appeal. The limitation of Rule 4 is a jurisdictional requirement and appellee is bound to file his cross-appeal within 14 days of the initial filing of the notice of appeal. Thus, because Terry's cross-appeal was filed more than 14 days after the appellant's notice was filed, we are compelled to dismiss his cross-appeal relating to the trial court's findings on paternity and relating to the limitation of visitation to one year.

VISITATION

This court has been asked to determine whether or not the trial court erred in granting Terry the right of visitation for one year and the right to continue such visitation by agreement of the parties. At this writing, approximately four months of the one-year period remain. Kathy and Tom request an immediate termination of visitation. They object to the visitation

award in its entirety, *i.e.*, the one-year provision and also the possibility for continued visits thereafter.

■ A trial court's determination on child custody is a finding of fact which will not be overturned on appeal unless it is clearly erroneous. *Olson v. Olson*, 361 N.W.2d 249, 251 (N.D.1985). We will apply the same standard of review to the trial court's determination on visitation in the instant case. After reviewing the record, we conclude that the trial court's award of visitation is not clearly erroneous.

■ Section 14-05-22, N.D.C.C., sets forth the authority for granting visitation and the relationship which is necessary to invoke the awarding of visitation:

"*14-05-22. Custody of children—Visitation rights.*

"1. In an action for divorce, the court, before or after judgment, may give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may vacate or modify the same at any time. Any award or change of custody must be made in accordance with the provisions of chapter 14-09.

"2. After making an award of custody, the court shall, upon request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health."

The relationship which is required under § 14-05-22 to trigger the award of visitation is that of parent-child. The noncustodial parent is entitled to visitation under that section. Because the trial court found that Terry is not Erik's biological parent, Terry does not automatically fall within the direct authority of § 14-05-22. Terry ar-

gues that because the visitation award arose out of a paternity action § 14-17-14, N.D.C.C., of North Dakota's Uniform Parentage Act, provides the basis for awarding visitation to Terry who is an unrelated third party to Erik. We do not believe that § 14-17-14 enlarges the basic provision of § 14-05-22 to extend visitation to *anyone*. We believe the authority for awarding visitation to a non-parent emanates from our previous decisions concerning child custody and visitation. This court has, on numerous occasions, upheld an award of custody to the grandparents. *Daley v. Gunville*, 348 N.W.2d 441 (N.D.1984); *Mansukhani v. Pailing*, 318 N.W.2d 748 (N.D.1982); *Odegard v. Odegard*, 259 N.W.2d 484 (N.D. 1977); *In Interest [Custody] of D.G.*, 246 N.W.2d 892 (N.D.1976); *McKay v. Mitzel*, 137 N.W.2d 792 (N.D.1965); *Borg v. Anderson*, 73 N.D. 95, 11 N.W.2d 121 (1943). *See also* Annot., 90 A.L.R.3d 222 (1979). The rationale for awarding custody to the grandparents is the existence of exceptional circumstances which will further the best interests of the child. *Daley, supra* 348 N.W.2d at 443-444. It is appropriate to extend the application of that same rationale to the award of visitation to a non-parent. The awarding of visitation to a non-parent is not uncommon.[1] *See Wills v. Wills*, 399 So.2d 1130 (Fla.App.1981); *Collins v. Gilbreath*, 403 N.E.2d 921 (Ind.App. 1980); *Simpson v. Simpson*, 586 S.W.2d 33 (Ky.1979). It is clear from the above-cited cases that the paramount concern in awarding visitation to a non-parent is the best interests of the child. *See* Annot., 1 A.L. R.4th 1270 (1980). This court stated in *Muraskin v. Muraskin*, 336 N.W.2d 332, 336 (N.D.1983), a case involving the modification of visitation rights of a noncustodial parent:

"Visitation privileges are created to promote the best interests of the child."

■ We now examine the trial court's findings to determine whether or not the award of visitation is clearly justified in

1. Our Legislature has provided grandparents with visitation rights through the enactment of § 14-09-05.1, N.D.C.C., in 1983.

light of the circumstances of the case. Rule 52(a) of the North Dakota Rules of Civil Procedure requires a court to make special findings of fact. The basis for the trial court's determination is not entirely clear from the court's findings. However, the court sets forth its rationale in a ruling made from the bench. We have stated previously that an oral recitation by the court from the bench complies with Rule 52(a), N.D.R.Civ.P., and is entitled to consideration on appeal, provided it contains findings of fact or conclusions of law by the court. *See Hust v. Hust,* 295 N.W.2d 316, 321 n. 3 (N.D.1980); *Deforest v. Deforest,* 228 N.W.2d 919 (N.D.1975). The trial court's oral ruling provides a basis for awarding visitation to Terry. The trial court recognized that a relationship has been established between Terry and Erik during the six months that Erik lived in Terry's home and in the visitations which have occurred since Terry's divorce from Kathy nearly four years ago. The trial court emphasized that Terry is not a stranger to Erik. Terry had reason to believe that he was Erik's biological father. He conscientiously paid the court-ordered child support for Erik as well as for Kelly. Terry will continue to exercise his right of visitation of Kelly until she reaches majority. If Terry abruptly ceased visitation with Erik, while at the same time continued to see Kelly, it would be detrimental to Erik according to the trial court. The trial court recognized that a gradual transition would best serve the interests of Erik.

Kathy and Tom assert that Terry should not have been granted visitation because Terry is not Erik's biological father. We disagree. It is the exceptional circumstances which justify the trial court's award in this case. We also disagree with Kathy's and Tom's contention that "Erik is of such tender years that little or no attachment formed with Terrence Lyle Swanson". Testimony indicates that Erik refers to both Terry and Tom as "Daddy". It is highly unlikely that no relationship at all has been formed in the last four years between Terry and Erik.

Finally, Kathy and Tom assert that Terry is an unfit person. Implicit in the trial court's award is a finding that Terry is a fit person who is entitled to visitation. We conclude that that finding is not clearly erroneous.

After examining the record, we conclude that the trial court's award of visitation is not clearly erroneous. The exceptional circumstances presented in this case justify Terry's visitation of Erik for one year, and further visitation by agreement of the parties to re-educate the children on the relationship between Erik and Terry. We realize that the appellants may be reluctant to agree to visitation beyond the one-year period. It should be borne in mind, however, that the best interests of the minor child Erik are at stake. The parties' conduct during the remainder of the one-year visitation period, as well as their decision on extending visitation rights thereafter, should be guided by Erik's interests. For the foregoing reasons, the trial court's decision is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.