James K. ROUTLEDGE, Plaintiff,
Appellant and Cross-Appellee,

v.

Donna M. ROUTLEDGE, Defendant,
Appellee and Cross-Appellant.

Civ. No. 10880.

Supreme Court of North Dakota.

Nov. 21, 1985.

Ella Van Berkom, Minot, for plaintiff, appellant and cross-appellee.

Farhart, Rasmuson, Lian & Maxson, Minot, for defendant, appellee and cross-appellant; argued by Judith Howard.

ERICKSTAD, Chief Justice.

James K. Routledge appeals from a district court judgment which granted a divorce to Donna M. Routledge. Donna has filed a cross-appeal from the judgment. We affirm and remand for consideration of Donna's request for attorney's fees on appeal.

James and Donna were married on March 24, 1975. It was the third marriage for James and the second for Donna. At the time of the marriage, James was 60 years old and Donna was 45 years old.

Donna has fought a lengthy battle with cancer, including numerous surgeries and other treatments. James was well aware of Donna's health problems prior to the marriage. James is now 70 years old and suffers from hypertension and respiratory ailments.

Prior to the marriage, Donna lived with several of her grown sons in a house in Mohall. James lived on the farm which he owned. After the marriage, the house in Mohall was torn down and replaced with a double-wide mobile home. James and Donna lived on the farm from spring through fall, and moved into the mobile home in Mohall for the winter months. Donna's sons lived in the mobile home year round, including the months when James and Donna lived there. It is undisputed that James was informed before the marriage that Donna considered the home in Mohall to be her family's home and that her sons could continue to live there as long as they wanted.

The couple separated in November, 1982, and James initiated this action seeking a divorce on the grounds of extreme cruelty. Donna counterclaimed for a divorce on the grounds of irreconcilable differences. The trial court granted the divorce to Donna. In dividing the marital property, the trial

court essentially awarded each party the property which each had brought into the marriage. James was ordered to pay Donna's health insurance premiums plus spousal support of $500 per month for Donna's lifetime.

The following issues are presented for review on appeal:

I. Did the trial court err in failing to grant the divorce to James on the grounds of extreme cruelty?

II. Did the trial court err in its award of spousal support?

III. Did the trial court err in extending the period of time for filing the cross-appeal?

IV. Was the trial court's property division clearly erroneous?

V. Is Donna entitled to attorney's fees on appeal?

## I.

James contends that the trial court erred in failing to grant the divorce to him on the grounds of extreme cruelty. The conduct which James complains about is Donna's acquiesence in allowing her grown sons to live with them during the winter months, even though he admittedly had been advised prior to the marriage that her sons would continue to live in the home in Mohall. He also contends that he was subjected to ridicule in the community because Donna's sons lived with them.

■ "Extreme cruelty" is defined in Section 14–05–05 of the North Dakota Century Code:

"*14–05–05. 'Extreme Cruelty' defined.* Extreme cruelty is the infliction by one party to the marriage of grievous bodily injury or grievous mental suffering upon the other."

The determination of fault grounds in a divorce is a finding of fact. *Rambel v. Rambel,* 248 N.W.2d 856, 859 (N.D.1977); *see also Voltin v. Voltin,* 179 N.W.2d 127, 131–132 (N.D.1970) (determination whether one party has inflicted "grievous mental suffering" upon the other in a separation action is a question of fact). On appeal, we

apply the "clearly erroneous" standard in reviewing findings of fact. Rule 52(a), N.D.R.Civ.P. We have thoroughly reviewed the record in this case, and we do not find that the trial court's findings of fact on this issue are clearly erroneous. The trial court did not commit reversible error in failing to grant James a divorce on the grounds of extreme cruelty.

## II.

James contends that the trial court erred in ordering him to pay Donna's health insurance premiums, currently $163.45 per month, plus $500 per month spousal support for life. James contends that the trial court should not have awarded *permanent* spousal support and that he cannot afford to pay $663.45 per month.

■ Section 14–05–24, N.D.C.C., authorizes the trial court to "compel either of the parties ... to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively." The trial court's determinations on matters of spousal support are treated as findings of fact which will not be set aside on appeal unless clearly erroneous. *Weir v. Weir,* 374 N.W.2d 858, 862 (N.D.1985); *Oviatt v. Oviatt,* 355 N.W.2d 825, 827 (N.D.1984). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Weir v. Weir, supra,* 374 N.W.2d at 862; *Hedin v. Hedin,* 370 N.W.2d 544, 547 (N.D.1985).

■ The trial court, in determining whether an award of spousal support is appropriate, is to consider the guidelines set forth in *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966). Factors to be considered include "the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of

each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material." *Weir v. Weir, supra,* 374 N.W.2d at 862.

■ We have expressly rejected the view that spousal support is a continuation of the duty of one spouse to support the other during marriage, and have accepted the theory of rehabilitative spousal support. Rehabilitative spousal support, in theory, allows the disadvantaged party time and resources to acquire an education or work skills. Where a party is incapable of rehabilitation, permanent spousal support may be awarded to provide traditional maintenance. *Delorey v. Delorey,* 357 N.W.2d 488, 490 (N.D.1984); *Bullock v. Bullock,* 354 N.W.2d 904, 911 (N.D.1984).

■ Two of the *Ruff-Fischer* factors support the award of permanent spousal support to Donna.[1] First, Donna suffers from severe medical problems. There was ample testimony outlining her continuing bout with cancer and her resultant inability to work. Second, James was awarded most of the marital property, including all of the income-producing property. Based upon these factors, the trial court could have reasonably concluded that Donna is incapable of rehabilitation beyond her present earning capacity, thereby justifying an award of permanent spousal support. *See Briese v. Briese,* 325 N.W.2d 245, 249 (N.D. 1982); *Gooselaw v. Gooselaw,* 320 N.W.2d 490, 493 (N.D.1982).

James also asserts that the trial court failed to balance Donna's needs with his

ability to pay in setting the amount of spousal support. Specifically, he claims that the farmland, which provides his only source of income beyond a modest monthly Social Security benefit, does not provide sufficient cash flow to make the $663.45 monthly payments to Donna.

■ In awarding spousal support the trial court must take into consideration the supporting spouse's needs and ability to pay. *Weir v. Weir, supra,* 374 N.W.2d at 865. James is correct in asserting that the trial court's function is to balance the competing interests and make a determination which is equitable between the parties.

However, this is not a case such as *Weir v. Weir, supra,* where we were convinced that the supporting spouse, in light of his income and other obligations, clearly could not make payments in the amount ordered by the trial court. James has been awarded the 800 acre farm and machinery, together valued at $451,835 with over $300,000 of equity, yet he claims that this property does not provide sufficient cash flow to make payments to Donna which total $7,961.40 annually. James currently is renting out the farmland on a crop-sharing basis. If that rent is inadequate to allow James to make payments to Donna and support himself, he has the option of selling the land and equipment, paying off the debts, and investing the remainder. The net value of the property would be approximately $300,000, which if invested would certainly yield enough to make the payments to Donna as well as provide adequate support for James. Under these circumstances, we conclude that the monthly payments will not be unduly burdensome to

---

**1.** The trial court did not specifically refer to the *Ruff-Fischer* guidelines in its findings of fact. There is no rule, however, that requires that the *Ruff-Fischer* factors be specifically enumerated. *Winter v. Winter,* 338 N.W.2d 819, 822 (N.D. 1983). We will not set aside the trial court's determinations on property division or spousal support for failure to explicitly state the basis for its findings if that basis is reasonably discernible by deduction or inference. *Lentz v. Lentz,* 353 N.W.2d 742, 745 (N.D.1984); *Winter v. Winter, supra,* 338 N.W.2d at 822.

We have reviewed the trial court's findings in light of the record and the evidence presented, and we are able to discern the basis of the court's award of spousal support. We reiterate, however, that appellate review is significantly more simple when findings of fact are prepared which clearly disclose the basis of the trial court's determinations. *Lentz v. Lentz, supra,* 353 N.W.2d at 745; *Winter v. Winter, supra,* 338 N.W.2d at 822.

James. *See Lippert v. Lippert*, 353 N.W.2d 333, 336 (N.D.1984).

James further asserts that in light of present economic conditions he could not sell the farm or machinery for the amount as found by the trial court. The trial court adopted the values placed upon the land and the machinery by James's expert appraisers and by James in a pre-trial property statement. James therefore cannot now object to the values ascribed to the property by the trial court.[2]

James also owns mineral rights which may provide additional income. James testified at trial that he owns one quarter of the mineral rights on the 800 acres of land he received through the division of property. At the time of trial, James's mineral interests were being leased at $30 an acre, but the lease was set to expire in November of 1984. James testified that the mineral rights had appreciated, and that they could be leased again upon expiration of the current lease. This testimony establishes that James owns valuable mineral interests which could provide additional income from which to make spousal support payments to Donna.

■ The party challenging a finding of fact on appeal bears the burden of demonstrating that the finding is clearly erroneous. *Byron v. Gerring Industries, Inc.*, 328 N.W.2d 819, 821 (N.D.1982); *Mees v. Mees*, 325 N.W.2d 207, 208 (N.D.1982). James, without even attempting to demonstrate his monthly income, has made only vague assertions about his inability to generate sufficient income to make the court-ordered payments to Donna. James has not convinced us that he is unable to make these payments, nor that an award of permanent alimony was improper under the facts of this case. We have thoroughly reviewed the record and we are not left with a definite and firm conviction that a mistake has been made; therefore, the trial court's determination on spousal support is not clearly erroneous.

**2.** If economic events subsequent to the entry of judgment have altered the value of the property, as James contends, his appropriate remedy is by

### III.

James asserts that Donna's cross-appeal was untimely. Notice of entry of the judgment was served on November 7, 1984. James filed a Notice of Appeal in the office of the Clerk of District Court on December 27, 1984. Donna's counsel prepared and mailed a Notice of Cross-Appeal on January 9, 1985, but it was not filed in the office of the Clerk of District Court until January 16, 1985.

Rule 4(a), N.D.R.App.P., provides in pertinent part:

> *"(a) Appeals in Civil Cases.* In a civil case the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 60 days of the date of the service of notice of entry of the judgment or order appealed from. If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this subdivision, whichever period last expires.

> \* \* \* \* \* \*

> "Upon a showing of excusable neglect, the trial court may extend the time for filing the notice of appeal by any party for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision. Such an extension may be granted before or after the time otherwise prescribed by this subdivision has expired; but if a request for an extension is made after such time has expired, it shall be made by motion with such notice as the trial court shall deem appropriate."

Pursuant to Rule 4(a), Donna had 14 days from the date of filing of the original Notice of Appeal to file a cross-appeal. This 14–day period expired on January 10, 1985. Donna's Notice of Cross-Appeal was not filed until January 16, 1985.

a motion to modify the spousal support award on the basis of changed circumstances.

James moved this Court to dismiss the cross-appeal. Donna requested that the case be remanded to the trial court for a determination on the issue of excusable neglect. We remanded to the trial court. The trial court found that there was excusable neglect and granted Donna an additional 30 days beyond January 10, 1985, to file the Notice of Cross-Appeal.[3] On appeal, James contends that the extension provisions of Rule 4(a), N.D.R.App.P., do not apply to a cross-appeal and that the trial court abused its discretion in finding excusable neglect and granting the extension in this case.

■ By its very terms, Rule 4(a) authorizes the trial court to extend the time for filing the notice of appeal *by any party*. There is nothing in the language of the Rule which implies that an extension to file a cross-appeal may not be granted. Furthermore, the corresponding federal rule, from which our rule was adopted, has consistently been construed to apply to a notice of cross-appeal. *See Shipp v. General Motors Corp.*, 750 F.2d 418, 428 (5th Cir. 1985); *Johnson v. Lehman*, 679 F.2d 918, 919–920 (D.C.Cir.1982); *Rabin v. Cohen*, 570 F.2d 864, 866 n. 2 (9th Cir.1978); *Linabary v. Maritime Overseas Corp.*, 376 F.Supp. 688, 689 (S.D.N.Y.1973), *aff'd*, 505 F.2d 727 (2d Cir.1974) (mem.). We hold that the extension of time provisions of Rule 4(a), N.D.R.App.P., apply to the filing of a notice of cross-appeal.[4]

■ James also contends that the trial court abused its discretion in granting the motion for extension of time. A motion for extension of time based upon excusable neglect is addressed to the sound discretion of the trial court, and the court's determination will not be set aside on appeal absent an abuse of discretion. *State Bank of Burleigh County v. Johnson*, 303 N.W.2d 520, 523 (N.D.1981). A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *E.g., Heidt v. State*, 372 N.W.2d 857, 858 (N.D.1985).

■ In the instant case, it appears that the late filing of the Notice of Cross-Appeal was due to a combination of factors, including counsel's mistaken interpretation of the rules and an inexplicable delay in mail service between Minot and Mohall. The trial court, in granting the motion to extend, specifically found that counsel "misapprehended" the applicable rules, believing that there was a three-day extension so that mailing the notice on the 13th day would result in filing with the clerk's office within the applicable time period. We do not find that the trial court acted in an arbitrary, unreasonable, or unconscionable manner in finding excusable neglect and granting the extension, and we therefore conclude that the trial court did not abuse its discretion. *See State Bank of Burleigh County v. Johnson, supra*, 303 N.W.2d at 523.

## IV.

In her cross-appeal, Donna asserts that the property division ordered by the trial court is inequitable. The trial court found that the total value of the parties' property was $485,164, and that their debts at the time of trial totalled $145,062, leaving a net value of $340,102. The trial court awarded Donna the mobile home and three lots in Mohall, the automobile, and furnishings,

---

3. Although the trial court's ruling was made well after the 30–day extension had expired, we have previously held that the motion for extension of time may be made after the extension period has expired if a notice of appeal was filed within the extension period. *Dehn v. Otter Tail Power Co.*, 248 N.W.2d 851, 853–856 (N.D. 1976).

4. Our decision in *Quirk v. Swanson*, 368 N.W.2d 557 (N.D.1985), does not require a different result. In *Quirk*, we dismissed a cross-appeal filed after the expiration of the 14–day period prescribed by Rule 4(a), N.D.R.App.P. The appellee contended that he was entitled to a three-day extension pursuant to Rule 26(c), N.D.R. App.P. We held that the automatic three-day extension of Rule 26(c) does not apply to the filing of a notice of cross-appeal. *Quirk v. Swanson, supra*, 368 N.W.2d at 559. Our holding in *Quirk* was not based upon the discretionary extension provisions of Rule 4(a), N.D.R. App.P., and does not affect a motion for extension of time pursuant to Rule 4(a).

valued at $22,300. The court awarded James the farm, machinery, boat, furnishings, life insurance, and Federal Land Bank stock, valued at $462,864. The court also ordered James to pay the marital debts of $145,062, so that the net value of the marital property distributed to James was $317,802.

■ The trial court's determinations on matters of property division are treated as findings of fact and will not be set aside on appeal unless they are clearly erroneous. *E.g., Anderson v. Anderson,* 368 N.W.2d 566, 568 (N.D.1985). That we might have viewed the facts differently if they had been presented to us initially as the trier of fact does not entitle us to reverse the lower court. *Layman v. Braunschweigische Maschinenbauanstalt, Inc.,* 343 N.W.2d 334, 342 (N.D.1983); *Sanford v. Sanford,* 301 N.W.2d 118, 126 (N.D.1980).

The trial court is to consider the *Ruff-Fischer* guidelines and distribute the marital property in an equitable manner. § 14–05–24, N.D.C.C.; *Lentz v. Lentz,* 353 N.W.2d 742, 744 (N.D.1984); *Williams v. Williams,* 302 N.W.2d 754, 757 (N.D.1981). Two of the *Ruff-Fischer* guidelines clearly support the trial court's distribution of property: the relatively short duration of the marriage and the source of the property.[5] The parties were married late in life, and they lived together for only seven years. The majority of their property was acquired before the marriage. The farmland had been purchased by James many years before the marriage. The trial court essentially awarded to the parties what each brought into the marriage: to James the farm and machinery, and to Donna the Mohall property.

Donna contends on appeal that this division of property is inequitable. She asserts that she should be awarded one-half of the marital property, or, at the least, one-half of the parties' increase in net value during the course of the marriage.

Donna cites *Gegelman v. Gegelman,* 342 N.W.2d 404 (N.D.1984), in support of her argument that an equal division of the increase in net worth is required in this case. In *Gegelman,* the trial court found that the husband's net worth at the time of the marriage was $35,000. The trial court, in dividing the marital property, awarded the husband $35,000, reflecting his pre-marital net worth, and then awarded each party approximately one-half of the remaining property. We affirmed, holding that the trial court's division of property was not clearly erroneous. *Gegelman v. Gegelman, supra,* 342 N.W.2d at 405. However, our holding in *Gegelman* does not, as Donna contends, require a similar result in this case. In *Gegelman* we merely held that, under the facts presented in that case, the trial court's division of property was not clearly erroneous. We did not announce a rule of law requiring that all property divisions in future cases be handled similarly.

■ Donna has also cited three cases from other jurisdictions which she claims support her contention that the trial court should have awarded her one-half of the value of the increase in the parties' net worth during the marriage. *In re Marriage of Lattig,* 318 N.W.2d 811 (Iowa Ct. App.1982); *Scherzer v. Scherzer,* 136 N.J. Super. 397, 346 A.2d 434 (App.Div.1975), *certification denied,* 69 N.J. 391, 354 A.2d 319 (1976); *Plachta v. Plachta,* 118 Wis.2d 329, 348 N.W.2d 193 (Ct.App.1984). The import of each of the three cases cited by Donna is that the appreciated value of non-marital property of one spouse may be subjected to property division, even though the original value of the property is exempt from distribution, if the nonowning spouse has contributed to the increase in value.[6]

---

5. The trial court again did not specifically enumerate the *Ruff-Fischer* factors which it relied upon. *See* n. 1, *supra.* We have reviewed the trial court's finding in light of the record and the evidence presented, and we are able to discern the basis of the court's division of property.

6. Although we conclude that the cases cited by Donna are inapplicable, we note that the appreciated value of the real property in this case appears to result more from the general inflation of land values which occurred during the years of the marriage, rather than from major'

These cases are wholly inapposite to the instant case. In North Dakota we have a more liberal view of marital property. All property owned by the parties, jointly or separately, is subject to distribution under Section 14–05–24, N.D.C.C. *Linn v. Linn*, 370 N.W.2d 536, 541–542 (N.D.1985); *Anderson v. Anderson*, 368 N.W.2d 566, 568 (N.D.1985). The trial court may or may not award the separate property of one spouse to the other, depending upon whether an equitable distribution so requires. *Anderson v. Anderson, supra.* In employing the *Ruff-Fischer* guidelines, the trial court may consider the source of the property in arriving at an equitable distribution. *Linn v. Linn, supra; Anderson v. Anderson, supra.*

 It is within the discretion of the trial court, after hearing the testimony and applying the *Ruff-Fischer* guidelines, to determine an equitable distribution of the property in each individual case. A property division need not be equal to be equitable. *Anderson v. Anderson, supra,* 368 N.W.2d at 569 n. 3; *Lippert v. Lippert,* 353 N.W.2d 333, 336 (N.D.1984). Similarly, there is no rule that the trial court equally divide any increase in the net worth of the parties which occurred during the marriage.

Just as James carried the burden on appeal of convincing us that the trial court's award of permanent spousal support was clearly erroneous, Donna bears the same heavy burden regarding the trial court's distribution of marital property. We have thoroughly reviewed the record and we are not left with a definite and firm conviction that a mistake has been made; therefore, the trial court's determination on property division is not clearly erroneous.

improvements made to the property by the parties.

7. Notwithstanding the fact that both parties have filed appeals and we have affirmed the judgment in its entirety, under appropriate circumstances an award of attorney's fees on appeal may be appropriate. Attorney's fees may be awarded to a party to prosecute or defend an appeal in a divorce case. *Hoster v. Hoster,* 216 N.W.2d 698, 703 (N.D.1974); *Johnson v. John-*

### V.

Donna requests that we award her attorney's fees on appeal. Although this Court and the trial court have concurrent jurisdiction to award attorney's fees on appeal, we have expressed our preference that the initial determination be made by the trial court. *E.g., Brodersen v. Brodersen,* 374 N.W.2d 76, 80 (N.D.1985); *Heller v. Heller,* 367 N.W.2d 179, 185 (N.D.1985).[7]

Accordingly, the judgment of the district court is affirmed and the case is remanded to the trial court for consideration of Donna's request for attorney's fees on appeal.

GIERKE, VANDEWALLE, LEVINE and MESCHKE, JJ., concur.

*son,* 211 N.W.2d 759, 763 (N.D.1973); *Halla v. Halla,* 200 N.W.2d 271, 276 (N.D.1972). Our concern when presented with a request for attorney's fees on appeal is not with who filed the appeal and who prevailed; rather, our attention is focused on the financial circumstances of the parties. *See Porter v. Porter,* 274 N.W.2d 235, 243–244 (N.D.1979); *Orwick v. Orwick,* 152 N.W.2d 95, 97 (N.D.1967); *Zundel v. Zundel,* 146 N.W.2d 903, 904–906 (N.D.1966).