Jeffrey T. PITSENBARGER, Plaintiff and Appellant,

v.

Dana J. PITSENBARGER, Defendant and Appellee.

Civ. No. 10997.

Supreme Court of North Dakota.

Feb. 20, 1986.

---

Serkland, Lundberg, Erickson, Marcil & McLean, Fargo, for plaintiff and appellant; argued by Ronald H. McLean.

Stefanson, Landberg, Plambeck & Geeslin, Moorhead, for defendant and appellee; argued by Randolph E. Stefanson.

MESCHKE, Justice.

Jeffrey J. Pitsenbarger appeals from a judgment entered by the District Court of Cass County following a hearing on motions to modify the custody and support provisions of an original divorce decree. We affirm in part, reverse in part, and remand with instructions.

Jeffrey and his wife, Dana J. Pitsenbarger, were divorced on December 10, 1982. Jeffrey and Dana have three daughters: Amy, age 12; Jenny, age 7; and Nancy, age 3. The original divorce decree, based upon a stipulated agreement by the parties, placed custody of the children with Dana and gave reasonable visitation rights to Jeffrey. The decree also provided for support payments to Dana with certain conditions.

In May 1984, Jeffrey filed a motion requesting the district court to modify the original decree by placing custody of the three children with Jeffrey and providing reasonable visitation rights for Dana. Jeffrey also requested the district court to declare that Jeffrey's support obligation had terminated, because Dana ceased her educational studies for a registered nursing degree to pursue, instead, a degree in elementary education. Dana resisted Jeffrey's request to modify the original custody provision and filed a countermotion to modify the original decree to provide for increased child support payments and to extend the period of time that Dana would receive support payments from Jeffrey.

Following an evidentiary hearing, the district court denied Jeffrey's request for a change of custody; interpreted the alimony provisions as providing support for Dana through June 1986 conditioned upon Dana being a student and remaining unmarried but not conditioned upon Dana pursuing a curriculum toward a registered nursing degree; and awarded Dana costs and attorney fees in an amount of $5,000 for the modification proceedings. Jeffrey's appeal raises three issues:

(1) Whether the trial court's finding that Jeffrey failed to prove a substantial change of circumstances so as to warrant modification of the original custody decree was clearly erroneous;

(2) Whether the trial court erred in its interpretation of the support provision under the original decree; and

(3) Whether the trial court erred in awarding attorney fees to Dana for the modification proceedings.

### 1. Custody

Jeffrey's motion to modify custody was based primarily upon his assertion that Dana's mental health problems, involving recurrent episodes of major depression, have deteriorated since the divorce so as to warrant a change of custody to Jeffrey in the best interests of the children. Jeffrey also asserted that his remarriage would allow him to provide a more stable and loving environment for the children, and that Dana has been uncooperative regarding Jeffrey's visitation rights and has attempted to instill a negative attitude in the children toward Jeffrey. In addition, Jeffrey expressed concern that the children were experiencing some difficulties in school as a result of Dana's health problems.

With regard to Dana's episodes of depression, her treating psychiatrists, Dr. David Sharbo and Dr. Joanne Hofstrand,

testified that Dana's illness is under control and that if she should have a recurrence of depression they have found effective treatment methods for her which can be provided on an out-patient basis. Both physicians also testified that, to a reasonable degree of medical certainty, they believe Dana will be able to continue to parent her children successfully.

Dr. Hofstrand testified:

"These children are bonded to Dana, they are attached to Dana, they are identified with Dana. She's been the primary caretaker for all of their lives. I see her both with the children and as she discusses them as a loving, responsible mother. She has an unusual ability to understand her children's needs and a wish to meet them.

"I see her doing quite a good job of that.

\*    \*    \*    \*    \*    \*

"My own impression of the children, based on my interview with them and a consultation that I obtained with the child psychiatrists that I trust the most, is that they love their mother and are comfortable with her.

"They are making good progress in their lives, they are thoroughly delightful children, their problems are normal ones. I think they can be handled by Dana.

\*    \*    \*    \*    \*    \*

"At this point it's my carefully considered opinion that the children will do the best in the ongoing custody of their mother. I have a very specific concern, based on my professional knowledge and expertise and work with adolescents and kids, that removing the children from the home at this point would be detrimental to them in and of itself; that is, separation from their primary caretaker would be detrimental to their further development."

A home study evaluation of Dana and the three children was conducted by the Village Family Service Center. That evaluation concluded:

"I observed Dana with the three children and it appears to me as though she is parenting them effectively.... They have no behavior problems and both of them are doing quite well academically.... It appears to me that Dana is capable of functioning and is functioning as a good parent for these three children."

The trial court appointed a guardian ad litem for the children. In his written report to the court, the guardian ad litem recommended that custody of the three children remain with Dana.

■   The trial court's consideration of a request to modify a custody award requires a determination of whether or not there has been a significant change of circumstances since the original custody award which warrants a change of custody in the best interest of the children. *Miller v. Miller*, 305 N.W.2d 666 (N.D.1981). The burden of showing a change of circumstances requiring a change in custody is on the party seeking modification. *Miller, supra*. On appeal, the trial court's determination on a motion for change of custody will not be set aside unless it is clearly erroneous under Rule 52(a), N.D.R.Civ.P. *Olson v. Olson*, 361 N.W.2d 249 (N.D. 1985).

■   The trial court determined:

"That the Defendant's mental and physical health is stable at the present time.

\*    \*    \*    \*    \*    \*

"That the mental and physical health of the Defendant has had little if any effect on the Defendant's parenting skills and abilities.

"That the children of the parties have lived in a stable satisfactory environment since the divorce decree and have progressed in a satisfactory manner.

\*    \*    \*    \*    \*    \*

"That love, affection and other emotional ties exist between each of the parents and children and each of the parents have the capacity and disposition to con-

tinue to provide said love and affection and education.

"That each of the parents has the disposition to provide for the children of the parties.

"That each of the parents would provide a stable, permanent, satisfactory environment.

\* \* \* \* \* \*

"That the Plaintiff has failed to show a material, significant change of circumstances since the original Divorce Decree to warrant modification of the Decree.

"That the best interests of the children would not be served by a change in custody.''

Having carefully reviewed the record in this case, we conclude that these findings are supported by substantial evidence and that the court's decision to not modify the original custody award is not clearly erroneous.

### 2. *Support*

■ Jeffrey asserts that the trial court erred in construing the alimony provision of the original decree as requiring him to continue to pay support to Dana even though she has terminated her educational pursuit of a registered nursing degree. The alimony provision of the original decree provides as follows:

"3. *Alimony.* The Husband shall pay to the Wife as and for alimony $800.00 per month for a period of 42 months from the date of entry of Judgment. It is agreed that $600.00 of that amount will be paid to the Wife on the first of the month and the remaining $200.00 will be paid on the 15th of the month. That upon the termination of 42 months, the Husband will not be responsible to the Wife for the $800.00 alimony support payment, and instead will be only obligated for a period not to exceed six months to pay to the Wife the cost of any tuition or books that she incures in

the period from 42 months to 48 months after the entry of Judgment in the above entitled matter, providing during that six month period she is a student. *Student shall mean being enrolled in sufficient credits at a school to which will satisfy the curriculum for a Registered Nursing Degree within 48 months of entry of Judgment.* It is further stipulated and agreed by the parties that all alimony required to be paid by the Husband is conditioned upon the Wife at all time being a student after one year of the birth of the third child, and that if she ceases to be a student, the Husband will not be obligated to pay any alimony. It is further stipulated and agreed that if the Wife remarries, all alimony obligations that the Husband has are terminated." [Emphasis added.]

The trial court construed this provision as requiring Jeffrey to make support payments for a period of 42 months providing that Dana continued to pursue an education even though she did not continue to pursue a curriculum to receive her registered nursing degree. Dana had terminated her pursuit of a registered nursing degree during March 1984 to pursue a course of study for a degree in elementary education.

The support provision of the original divorce decree was based upon a contractual stipulation by the parties which is governed by the law of contracts. *Seablom v. Seablom,* 348 N.W.2d 920 (N.D.1984). The determination of whether or not a contract is ambiguous is a question of law for the court to decide. *Brown v. North Dakota State University,* 372 N.W.2d 879 (N.D. 1985). We agree with Jeffrey that his support obligation was unambiguously conditioned upon Dana attending school to pursue a registered nursing degree. Accordingly, we conclude that the trial court erred in its interpretation of the support provision, and we reverse that portion of the judgment.[1]

---

1. Assuming, for purposes of argument, that the support provision in the original decree was ambiguous as to whether Jeffrey's obligation was conditioned upon Dana's pursuit of a reg-

istered nursing degree, Dana's own testimony during the hearing on the modification requests demonstrates that she understood the provision to mean that Jeffrey's support obligation would

In her countermotion, Dana requested the court to extend Jeffrey's support obligations on the ground of changed circumstances. The trial court made no findings or conclusions with regard to that issue. In view of our reversal of the trial court's interpretation of the original support provision, we remand with instructions that the trial court make a determination on Dana's request for modification of the original support award on the basis of changed circumstances.

### 3. *Attorney Fees*

■ Jeffrey also asserts that the trial court erred in awarding Dana attorney fees for the modification proceedings because, Jeffrey contends, there is no statutory or other authority for the court to make such an award. We disagree. Section 14-05-23, N.D.C.C., authorizes the court to award attorney fees "during any time in which an action for divorce is pending." Pursuant to Section 1-02-01, N.D.C.C., statutes "are to be construed liberally" with a view toward effecting their objects and "to promoting justice." This Court has previously concluded that attorney fees can be awarded in the discretion of the trial court, under Section 14-05-23, N.D.C.C., to a party in modification proceedings. *Becker v. Becker*, 262 N.W.2d 478 (N.D.1978). We believe that *Becker, supra,* was a proper application of the law, and, accordingly, we conclude that the trial court did not err in awarding Dana attorney fees for the modification proceedings.

Dana requested the trial court to award her attorney fees on appeal. The trial court postponed its ruling on that request pending a final decision by this Court on the merits of the appeal. Although this Court and the trial court have concurrent jurisdiction to award attorney fees on appeal, we have on numerous occasions expressed our preference that the initial determination be made by the trial court. *E.g., Routledge v. Routledge*, 377 N.W.2d 542 (N.D.1985). Accordingly, we remand this issue to the trial court for consideration of Dana's request for attorney fees on appeal.

### 4. *Conclusion*

The judgment of the district court is affirmed in part, reversed in part, and remanded for the trial court to proceed in accordance with this opinion. Pursuant to our authority under Rule 39(a) of the North Dakota Rules of Appellate Procedure, we order that costs for this appeal shall be taxed against Jeffrey.

ERICKSTAD, C.J., GIERKE and VANDE WALLE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.

PEDERSON, Surrogate Judge, concurring specially.

I agree with opinion authored by Justice Meschke but feel compelled to express my concern about the manner in which issues relating to ambiguity appear to be first raised at the appellate level. It is not only this case but most suits involve contradictory versions of the meaning of words, phrases, sentences, and paragraphs. Mostly the ambiguity relates to the background, and extrinsic evidence is offered without a clear-cut conclusion of law that there is an ambiguity. When the case is tried to the court, as this one was, a finding of fact as

---

terminate if she discontinued her pursuit of a registered nursing degree:

"A. ... I—I knew of the statement in the decree that said that I must be in the nursing program, so I really tried to stick to it so as not to be—be caught off guard on that one.

\*  \*  \*  \*  \*  \*

"Q. Are you receiving that alimony today?
"A. No.
"Q. Why not?

"A. It was discontinued.
"Q. By Jeff?
"A. By Jeff.
"Q. For what reason? Do you know?
"A. I think I know. For the—because it stated in the decree that I needed to be a nursing student at NDSU, in the nursing program there. If I was not, then I had no access to this alimony."

to meaning is required, but is usually absent, as in this case.

Even though lawyers are reluctant to do so, they would present a better argument on appeal if they would concede at the trial court level that their opponents interpretation is a possibly correct interpretation, by arguing that an ambiguity exists, introduce extrinsic evidence of their own interpretation, and get a finding of fact that would have the presumption of correctness on appeal under Rule 52(a), N.D.R.Civ.P.